2000 UT App 314

BROOKSIDE MOBILE HOME PARK, LTD., a Utah limited partnership dba Brookside Mobile Home Park, Plaintiff, Appellant, and Cross-appellee,

v.

Sam PEEBLES aka Samuel B. Pebbles, an individual; and Harold Boyd Pebbles, an individual, Defendants, Appellees, and Cross-appellants.

No. 990518–CA.

Court of Appeals of Utah.

Nov. 9, 2000.

Russell A. Cline, Crippen & Cline LC, Salt Lake City, for Appellant.

Dennis K. Poole and John L. Adams, Dennis K. Poole & Associates PC, Salt Lake City, for Appellees.

Before JACKSON, Associate P.J., and BILLINGS and DAVIS, JJ.

## OPINION

JACKSON, Associate Presiding Judge:

¶ 1 Brookside Mobile Home Park, Ltd. (Brookside) challenges the trial court's denial on reconsideration of Brookside's summary judgment motion, the directed verdict for Sam Peebles on Brookside's unlawful detainer claim, and the denial of Brookside's request for attorney fees and costs. Sam Peebles cross appeals from the jury verdict and the trial court's denial of Peebles's request for attorney fees and costs.[1] We affirm on all issues, except that we reverse the trial court's denial of Peebles's request for attorney fees and costs.

## BACKGROUND

¶ 2 In 1983, Peebles bought a mobile home occupying Space 100 in Brookside Mobile Home Park (Park) located in West Jordan, Utah. He entered a space lease with a former owner of the Park, Brookside Associates (Associates). Peebles later sold the mobile home to a couple who entered into their own lease with Associates. When the couple defaulted on their purchase contract with Peebles, Peebles retook possession of the mobile home and signed a second lease. Peebles then rented the mobile home to a series of renters. He finally contracted to either rent or sell the mobile home to Richard Rowley, who entered into a lease agreement with Associates for Space 100.

¶ 3 Associates sold the Park to a trust and entered into an agreement with the trust titled "Assignment of Leases and Deposits," dated December 9, 1994. In the agreement, Associates assigned to the trust

> its right, title and interest in and to those certain leases, rental agreements, security or other deposits from tenants, and rentals with respect to such leases and agreements appurtenant to the [Park] ... (hereinafter collectively referred to as the "Leases"), which Leases, rents, and security deposits are more particularly described on Exhibit "B" attached hereto and incorporated herein by this reference.

Exhibit B was the Park's rent roll, showing Rowley as the resident of Space 100, with no mention of Peebles. Less than one month later, the trust sold the Park to Brookside and assigned the very same set of leases to Brookside, again with no mention of Peebles. On April 1, 1995, Rowley entered into a new space lease agreement with Brookside.

¶ 4 In the fall of 1995, Rowley abandoned the mobile home without paying some rent due Brookside. On November 29, 1995, Brookside sent a notice to Peebles, stating the following:

> Be advised that the above referenced mobile home has been abandoned. In accordance with Utah Code § 57–16–9, you, as lien holder of record and now deemed a tenant at will are primarily liable to the Brookside Mobile Home Park for all rent and service charges accruing after ten (10) days following your reciept [sic] of this notice if the mobile home is not moved.

¶ 5 On December 11, 1995, Brookside sent Peebles a "Notice to Pay Rent or Quit," stating:

> Please take notice that the rent on the premises located at Brookside Mobile Home Park, No ____, which you now possess as a tenant, is past due.

---

1. Brookside argues that Harold Peebles, a named defendant whom the trial court dismissed from this action, should be reinstated as a defendant. However, Brookside has not complied with our briefing rules requiring a proper legal argument "with citations to the authorities ... relied on." Utah R.App. P. 24(a)(9). We therefore decline to address this argument. *See Smith v. Smith*, 1999 UT App 370, ¶ 8, 995 P.2d 14 ("Briefs that are not in compliance with Rule 24 may be disregarded or stricken sua sponte by the court.").

You must, within three days after service of this Notice upon you, pay the rent now due and owing on the premises, or, in the alternative, you must, within such period of three days, vacate the premises and deliver possession to your landlord, Brookside Mobile Home Park, Ltd., or its duly authorized agent....

In the event that you should cure the above default within the time period allowed, but in the future at any time should default in the payment of rent when due, violate any of the Rules and Regulations of Brookside Mobile Home Park, or breach any provision of the Lease Agreement, such repeated default and/or violation will result in immediate termination of your lease without any further period to cure such default or violations and eviction proceedings will be initiated immediately.

Peebles then began paying monthly rent.

¶ 6    On December 27, 1995, Brookside prepared a form listing several repairs that needed to be done to keep the mobile home "in compliance with current park standards."

¶ 7    On April 11, 1996, Brookside posted upon the mobile home a "Notice to Quit," addressed to Peebles at his Riverton, Utah address.  The notice stated:

[Y]ou must, within five (5) days after service of this Notice upon you, remove the mobile home purportedly owned by you from the premises ... and deliver possession of said premises to its owner, Brookside Mobile Home Park, Ltd., or its duly authorized agent....

In the event of your failure to comply with the above notice to vacate the premises within the specified period, you will be unlawfully detaining the premises, and in accordance with the provisions of Section 78–36–3, *Utah Code Ann.* (1953), you will be liable for treble damages for such unlawful detainer, and an action will be commenced against you to evict you from the premises and to take judgment against you for three times the damages assessed by the Court for unlawful detainer, together with costs of legal action.

This notice is given and served in accordance with the provisions of Sections 78–36–3 and 78–36–6, Utah Code Ann. (1953 as amended).

¶ 8    Around that time, Brookside filed an unlawful detainer action against Peebles because Peebles allegedly had not complied with Park rules in maintaining his mobile home.  Peebles defended the unlawful detainer action, asserting five days was insufficient notice.  He contended the action should have been filed under the Mobile Home Park Residency Act (the Act), which requires fifteen days notice.  *See* Utah Code Ann. § 57–16–6(2)(a) (1994) ("In the event of failure to abide by a mobile home park rule, the notice shall provide for a 15–day cure period....").

¶ 9    On September 25, 1996, Peebles agreed to sell the mobile home to Jackie Southworth.  However, when Brookside denied her application to become a tenant of the Park, the sales agreement fell through.  Peebles then filed a counterclaim against Brookside, claiming, among other things, that Brookside had violated the Act by unreasonably withholding approval of Southworth's tenancy application.  *See* Utah Code Ann. § 57–16–4(4) (Supp.2000).

¶ 10    Brookside moved for summary judgment, arguing that the undisputed facts showed that Peebles did not have a lease with Brookside, and Peebles thus was not a "resident"[2] of the Park under the Act.  Therefore, Brookside contended that its claim fell under the unlawful detainer statute, not the Act, rendering sufficient the notice it had given Peebles and invalidating Peebles's counterclaims under the Act.  Peebles responded that the Act applies to this case because he was a resident/lessee of the Park when Brookside brought its action.  He maintained that the leases he had entered into with Associates were still in effect, having been assigned to Brookside.

¶ 11    The trial court ruled for Brookside, agreeing that this case had been properly brought as an unlawful detainer action and did not fall under the Act.  It stated that the

**2.**    " 'Resident' means an individual who leases or rents space in a mobile home park."  Utah Code Ann. § 57–16–3(3) (1994).  "Each agreement for the lease of mobile home space shall be written and signed by the parties."  *Id.* § 57–16–4(2) (Supp.2000).

fact that Peebles knew that other buyers or renters of his mobile home had entered into lease agreements with Brookside and/or its predecessors constituted as a matter of law a surrender by Peebles of his earlier space lease. The trial court determined that it was immaterial that Peebles had presented evidence showing that it had been the Park's custom to keep leases for a single space with both the mobile home owner and the owner's renter.

¶ 12 Peebles then filed a motion asking the trial court to reconsider its decision. Peebles urged that an issue of material fact was in dispute regarding whether he knew of and/or consented to the leases Rowley entered into with Associates and Brookside, and he attached supplemental affidavits in which he asserted that he did not know about the Rowley leases when they were made. Consequently, he argued, a factual question remained as to whether he had surrendered his lease.

¶ 13 The trial court found Peebles's arguments persuasive, stating:

There is no dispute about the legal proposition concerning surrender. However, defendant [Peebles] does dispute that there was a surrender alleging he had no knowledge that there were lease agreements with occupants of the mobile home with whom he dealt with as subtenants. Defendant further asserts facts that could be interpreted to demonstrate that he was dealt with by plaintiff in a manner reflective of his perceived position as tenant. Most notably, the notice to vacate refers to defendant as tenant.

The effect of these assertions is that there is a dispute of material fact and my previous conclusion to the contrary is erroneous.

The matter was then set for trial.

¶ 14 After Brookside presented its evidence at trial, Peebles moved for a directed verdict. Peebles argued that, even if no written lease existed between Peebles and Brookside, Peebles was an "owner resident" of the Park and thus could be in unlawful detainer of the space only under the Act. Utah Code Ann. § 78–36–3(2) (1996) ("Unlawful detainer by an owner resident of a mobile home is determined under Title 57, Chapter 16, Mobile Home Park Residency Act."). The Act defines "resident" as "an individual who leases or rents space in a mobile home park." *Id.* § 57–16–3(3) (1994). Peebles therefore contended that, given his alleged status as a resident of the Park, anything less than fifteen days was insufficient notice.

¶ 15 The trial court agreed with Peebles's argument and dismissed Brookside's unlawful detainer claim, stating the following:

I find that the owner residence language of [78–36–3], where you have a circumstance in this case, the facts are undisputed and that is that Mr. Sam Peebles is the owner of the home and there is no one residing in the home, is entitled to the notice that should be given under Title 97 [sic], Chapter 16, that's the 15 days. Consequently, the notice which is Exhibit 42, is deficient in that regard.

¶ 16 Peebles went on to present evidence supporting his counterclaim. The jury then reached a verdict, finding the following: (1) Peebles had a written lease with the Park before January 4, 1995, when Brookside acquired the Park; (2) Peebles's lease was not surrendered; (3) Brookside did not assume Peebles's lease; and (4) Brookside did not unreasonably withhold approval of the residency of a prospective buyer of Peebles's mobile home. Each party unsuccessfully moved for an award of attorney fees and costs under the Act.

¶ 17 Brookside appeals from the following trial court rulings: (1) the order reconsidering and reversing summary judgment for Brookside; (2) the grant during trial of a directed verdict for Peebles on Brookside's unlawful detainer claim; and (3) the denial of Brookside's request for attorney fees and costs. Peebles cross appeals, challenging the jury verdict rejecting Peebles's counterclaim and the trial court's denial of his request for attorney fees and costs.

### ANALYSIS

#### I. Brookside's Appeal

##### A. Summary Judgment Reversal

¶ 18 Brookside contends the trial court incorrectly reversed its earlier sum-

mary judgment ruling for Brookside. Specifically, Brookside argues that the trial court should not have taken into account Peebles's supplemental affidavits with his reconsideration motion because the affidavits allegedly contradict Peebles's prior deposition testimony available when the trial court originally ruled.[3]

¶ 19 However, we conclude that—regardless of the supplemental affidavits' contents—the trial court was correct in determining that a disputed issue of material fact existed regarding whether the Peebles/Associates lease had been surrendered. Brookside contends that Peebles knew about and consented to the leases between his renters and the Park, and that this fact alone equals surrender as a matter of law. Meanwhile, Peebles has alleged that because he believed his Park lease co-existed with those of his renters he did not have the intent necessary to surrender his lease.

¶ 20 Under the common law doctrine of surrender and acceptance,

when a tenant surrenders the premises to a landlord before a lease term expires and the landlord accepts that surrender, the tenant is no longer in privity of estate with the landlord and therefore has no obligation to pay any rents accruing after the date of the acceptance. Phrased in contract law parlance, the lease is treated as having been rescinded or terminated by mutual agreement.

*Reid v. Mutual of Omaha Ins. Co.,* 776 P.2d 896, 900 (Utah 1989); *see Willis v. Kronendonk,* 58 Utah 592, 598, 200 P. 1025, 1028 (1921). A surrender and acceptance stems from an agreement between the parties, whether express or implied. *See Belanger v. Rice,* 2 Utah 2d 250, 252, 272 P.2d 173, 174 (1954). This case involves the latter (also known as "surrender by operation of law"), which " 'results from acts which imply mutual consent independent of the expressed intent

of the parties . . . ; it is by way of estoppel.' " *Id.* (citation omitted). Surrender and acceptance should not be inferred " 'against the intent of the parties, as manifested by their acts.' " *Id.* (citation omitted).

¶ 21 The party who relies on the surrender of the lease has the burden of proving it. *See Mariani Air Prods. Co. v. Gill's Tire Market,* 29 Utah 2d 291, 293, 508 P.2d 808, 810 (1973). "[A]nd the proof must be clear where the surrender is to be inferred from circumstances inconsistent with the intention to perform. The question of whether the acts and circumstances constituted a surrender and acceptance is one for the fact finder." *Id.; see also John C. Cutler Ass'n v. De Jay Stores,* 3 Utah 2d 107, 112, 279 P.2d 700, 703 (1955) ("The question of surrender, being generally one of fact as to what was the intention of the parties, is to be determined from all of the attendant circumstances including the conduct and expressions of the parties.").

¶ 22 Here, Brookside has tried to carry its burden of showing surrender and acceptance by alleging what it considers to be one determinative fact: that Peebles knew of and/or consented to the leases between his renters and Park owners. However, even if that fact is undisputed, Peebles introduced affidavit, deposition, and documentary evidence that showed that, when a mobile home owner rented a mobile home to another person, the Park had a practice of keeping on file two space leases—one with the mobile home owner and one with the renter. This was allegedly "to protect [the Park's] back end." In fact, a former Park manager stated in his deposition that the owner's lease was kept in the Park's file so that "he's still obligated to the park" in case the renter stops paying space rent. Also, as the trial court noted, the December 11, 1995 "Notice to Pay Rent or Quit" directed to Peebles called Peebles a "tenant," Brookside the

---

**3.** Brookside also argues that, even if the supplemental affidavits were properly before the trial court, Brookside should have won summary judgment based on its bona fide purchaser theory. Although Brookside raised this argument in the original summary judgment motion, it did not mention the argument when it responded to Peebles's reconsideration motion—the resolution

of which he appeals. At that crucial point, Brookside did not give the trial court the opportunity to consider an alternative basis for awarding summary judgment for Brookside. Accordingly, Brookside has not properly preserved the bona fide purchaser issue for appeal, and we decline to address it. *See Badger v. Brooklyn Canal Co.,* 966 P.2d 844, 847 (Utah 1998).

"landlord," and spoke of Peebles breaching a "Lease Agreement."

¶ 23 The *Cutler* case is instructive regarding the effect of a second lease with a third party on the existence of the first lease. *See id.* at 701–03. In that case, a tenant leased a store, which proved unprofitable. *See id.* at 701. Before the lease period ended, the tenant returned the keys to the landlord, left the store, and stopped paying rent. *See id.* at 702. After the landlord unsuccessfully tried to relet the store, it sued the tenant for the unpaid rent. *See id.* The tenant raised the doctrine of surrender and acceptance as a defense, arguing that the tenant had surrendered the lease and, by taking back the keys and trying to relet the store, the landlord had accepted. *See id.* at 702–03.

¶ 24 The supreme court stressed the fact-intensive nature of surrender—that it "is to be determined from *all* of attendant circumstances." *Id.* at 703 (emphasis added). The court embraced the view that reletting does not terminate the lease as a matter of law. *See id.* at 702. Further, the landlord's attempt to relet the store did not automatically equal acceptance of the tenant's purported surrender. *See id.* at 702–03. The court stated that the rule "that there is no arbitrary standard to be applied[ ] best lends itself in doing justice in such controversies." *Id.* at 703.

¶ 25 Likewise, here, Peebles's knowledge that the Park was "reletting" the space to his renters does not inevitably lead to the conclusion that he intended to surrender his lease. In its reconsideration of its earlier summary judgment ruling, the trial court recognized what is obvious to us here: there was a disputed issue of material fact regarding the intent of both parties in allegedly assenting to the existence of dual leases. The trial court therefore correctly concluded that this factual question could not properly be decided on summary judgment and granted Peebles's motion for reconsideration of the original summary judgment ruling for Brookside.

## B. Directed Verdict

¶ 26 Brookside next attacks the trial court's directed verdict dismissing its unlawful detainer claim. The trial court determined that Peebles was an "owner resident" of the Park and as such could be sued for unlawful detainer only in accordance with the Act. Utah Code Ann. § 78–36–3(2) (1996) ("Unlawful detainer by an owner resident of a mobile home is determined under Title 57, Chapter 16, Mobile Home Park Residency Act."). Therefore, the trial court reasoned, because the Act required fifteen days notice and Brookside provided only five, notice was deficient, rendering Brookside's unlawful detainer claim invalid.

¶ 27 Brookside contests the trial court's conclusion, arguing that—regardless of the "owner resident" language—the Act applies only to those with written leases and, because Peebles did not have a written lease with Brookside, the Act does not apply to Peebles. *See id.* § 57–16–4(2) (Supp.2000) ("Each agreement for the lease of mobile home space shall be written and signed by the parties."). Brookside thus contends it had no choice but to bring its unlawful detainer action under the forcible entry and detainer statute in chapter 36 of the Utah Code. *See id.* §§ 78–36–1 to –12.6 (1996 & Supp.2000).

¶ 28 However, Brookside does not challenge the jury finding that Peebles had a written lease with the Park before Brookside bought the Park, nor does it challenge the finding that Peebles did not surrender the lease.

¶ 29 The jury also found that Brookside did not assume Peebles's lease. However, that finding is irrelevant here. The Act provides no way for a buyer of a mobile home park to deem terminated any lease it does not specifically assume in the purchase. The Act unequivocally states: "A mobile home park or its agents may not terminate a lease or rental agreement upon any ground other than as specified in this chapter." Utah Code Ann. § 57–16–4(1) (Supp.2000). The purchase of the mobile home park by a new owner who either does not assume an existing lease or does not know about an existing lease is not one of the

grounds for terminating a lease. *See id.* § 57–16–5 (1994).[4] Mobile home space leases may be terminated only for cause.[5]

¶ 30 In sum, because Peebles had a lease, which he had not surrendered, and that lease was not terminated under the Act, the lease remained in existence at the time Brookside brought its unlawful detainer action. The action was thus authorized only under the Act, which required fifteen days notice. Brookside did not give fifteen days notice. Therefore, although the trial court used a different analysis, we affirm its dismissal of Brookside's claim. *See Gibbs M. Smith, Inc. v. United States Fid. & Guar. Co.*, 949 P.2d 337, 342 n. 3 (Utah 1997) ("'[W]e may affirm a trial court's decision on any proper ground(s), despite the trial court's having assigned another reason for its ruling.'" (Citation omitted.)).

### C. Attorney Fees

¶ 31 Finally, Brookside decries the trial court's denial of its motion for attorney fees and costs under Utah Code Ann. § 57–16–8 (1994), which reads, in pertinent part:

If a resident elects to contest an eviction proceeding, all rents, fees, and service charges due and incurred during the pendency of the action shall be paid into court according to the current mobile home park

payment schedule.... Upon final termination of the issues between the parties, the court shall order all amounts paid into court paid to the mobile home park. The prevailing party is also entitled to court costs and reasonable attorney's fees.

Utah Code Ann. § 57–16–8 (1994). Brookside asked for the attorney fees and costs it incurred in successfully defending Peebles's counterclaim brought under the Act. However, the trial court read section 57–16–8 as disallowing the requested attorney fees and costs.

¶ 32 "The general rule in Utah is that, subject to certain exceptions, a party is entitled to attorney fees only if authorized by statute or by contract." *Meadowbrook, LLC v. Flower*, 959 P.2d 115, 117 (Utah 1998). Brookside does assert the requisite statutory basis for the award. Even so, we conclude that the trial court correctly interpreted the section at issue.

¶ 33 "When we interpret a statute, we must look first to the statute's plain language to determine the legislative intent and we look no further if the language is unambiguous on its face." *Dairy Prod. Serv. v. City of Wellsville*, 2000 UT 81, ¶ 21, 13 P.3d 581. The section at issue regards situations in which "a resident elects to contest an

---

4. Utah Code Ann. § 57–16–5 (1994) reads:
An agreement for the lease of mobile home space in a mobile home park may be terminated during its term by mutual agreement or for any one or more of the following causes:
(1) failure of a resident to comply with a mobile home park rule for a period of 15 days after receipt of notice of noncompliance from the mobile home park;
(2) repeated failure of a resident to abide by a mobile home park rule, if the original notice of noncompliance states that another violation of the same or a different rule might result in forfeiture without any further period of cure;
(3) behavior by a resident which substantially endangers the security and health of the other residents or threatens the property in the park;
(4) nonpayment of rent, fees, or service charges;
(5) a change in the land use or condemnation of the mobile home park or any part of it.
This section has been amended with some new language since 1994, *see* Utah Code Ann. § 57–16–5 (Supp.2000); however, this case arose under the version in the 1994 code volume.

5. This analysis comports with the Act's purpose of guarding the interests of those owning mobile homes in mobile home parks: "The high cost of moving mobile homes, the requirements of mobile home parks relating to their installation, and the cost of landscaping and lot preparation necessitate that the owners of mobile homes occupied within mobile home parks be provided with protection from actual or constructive eviction." Utah Code Ann. § 57–16–2 (1994). Said another way, "[t]he cause requirement prevents a park owner from terminating residents' leases at whim and forcing them to undergo great expense uprooting their homes, along with their footings, skirting, decks, and landscaping, and attempting to secure another lease elsewhere." *Coleman v. Thomas*, 2000 UT 53, ¶ 19, 4 P.3d 783; *cf. Yee v. City of Escondido*, 503 U.S. 519, 523, 112 S.Ct. 1522, 1526, 118 L.Ed.2d 153 (1992) ("The term 'mobile home' is somewhat misleading. Mobile homes are largely immobile as a practical matter, because the cost of moving one is often a significant fraction of the value of the mobile home itself.").

eviction proceeding." Utah Code Ann. § 57–16–8 (1994). The "prevailing party" in the challenge of an eviction proceeding is entitled to attorney fees and costs. *Id.*

¶ 34 In this case, the portion of the case in which Brookside prevailed and for which it requests fees was the defense of Peebles's counterclaim. However, although Peebles's counterclaim was under the Act, it was not to "contest an eviction proceeding," as required by section 57–16–8 for the entitlement to attorney fees and costs. Peebles's counterclaim had nothing to do with eviction proceedings, but stood on its own set of facts regarding the allegedly unreasonable withholding of approval of a prospective buyer for Peebles's mobile home. *See id.* § 57–16–4(4) (Supp.2000).

¶ 35 Accordingly, we affirm the trial court's denial of Brookside's request for attorney fees and costs.

## II. Peebles's Cross Appeal

### A. Unreasonable Withholding of Approval Claim

¶ 36 Peebles first argues that insufficient evidence existed to support the jury's verdict that Brookside did not unreasonably withhold approval of Southworth's residency in the Park. Because of Brookside's failure to approve Southworth, Peebles was not able to sell the mobile home to her. He asserts damages because he then had to continue making the space rent payment and eventually pay to move the mobile home elsewhere.

¶ 37 "In reviewing a jury verdict, 'we view the evidence in the light most supportive of the verdict, and assume that the jury believed those aspects of the evidence which sustain its findings and judgment.'" *Billings v. Union Bankers Ins. Co.*, 918 P.2d 461, 467 (Utah 1996) (citation omitted). Further, "we will upset a jury verdict only upon a showing that the evidence so clearly preponderates in favor of the [cross] appellant that reasonable people would not differ on the outcome of the case." *Id.* (internal quotations and citations omitted).

¶ 38 Here, the jury heard evidence that Brookside was unable to verify Southworth's

employment and bank account. It also heard evidence that the mobile home remained in disrepair at that time. Although Southworth testified with explanation as to why she should not have been penalized for these circumstances, the jury was free to disbelieve her and to believe Brookside's witnesses to the contrary. We therefore conclude that sufficient evidence supported the jury's factual determination on the reasonableness of Brookside's behavior and affirm the jury's verdict.

### B. Attorney Fees

¶ 39 Peebles also asks for attorney fees and costs under section 57–16–8 of the Act, and asserts his entitlement to them for defending "an eviction proceeding." Utah Code Ann. § 57–16–8 (1994). Although Brookside brought its unlawful detainer claim under title 78, chapter 36 of the Code, Peebles did indeed successfully defend "an eviction proceeding." We have already determined that Peebles was a lessee of the Park, which made him a "resident." *Id.* § 57–16–3(3) (" 'Resident' means an individual who leases or rents space in a mobile home park.").

¶ 40 Thus, as the "prevailing party" on the eviction proceeding, Peebles is entitled to reasonable attorney fees and costs associated only with his defense of the eviction proceeding before the trial court and on appeal. *See, e.g., Living Scriptures, Inc. v. Kudlik*, 890 P.2d 7, 11 (Utah Ct.App.1995) (" 'A party who was awarded attorney fees and costs at trial is also entitled to attorney fees and costs if that party prevails on appeal.'" (citation omitted)). We therefore remand to the trial court for the sole purpose of determining the amount of attorney fees and costs to be awarded Peebles.

## CONCLUSION

¶ 41 We conclude that the trial court was correct in reversing its original summary judgment ruling for Brookside and setting the case for trial. We further conclude that the trial court was correct in directing a verdict for Peebles on Brookside's unlawful

detainer claim and in denying Brookside its request for attorney fees and costs.

¶42  We also affirm the jury's verdict for Brookside on Peebles's counterclaim.  Finally, we reverse the trial court's denial of Peebles's request for attorney fees and costs and remand for the determination of Peebles's reasonable attorney fees and costs in defending Brookside's unlawful detainer claim both in the trial court and on appeal.[6]

WE CONCUR: JUDITH M. BILLINGS, Judge, and JAMES Z. DAVIS, Judge.

---

**6.** We have thoroughly considered all other issues raised by the parties and determine them to be without merit; we therefore decline to address them further.  *See State v. Carter,* 776 P.2d 886, 888 (Utah 1989); *cf. Reese v. Reese,* 1999 UT 75, ¶8, 984 P.2d 987 (holding, to allow supreme court certiorari review, this court must "at the very least identif[y] the basis for refusing to treat an issue").