2002 UT 48

**BROOKSIDE MOBILE HOME PARK, LTD., a Utah Limited Partnership dba Brookside Mobile Home Park, Petitioner,**

v.

**Sam PEEBLES aka Samuel B. Peebles, an individual; and Harold Boyd Peebles, an individual, Respondents.**

No. 20001078.

Supreme Court of Utah.

May 7, 2002.

Dennis K. Poole, John L. Adams, Salt Lake City, for petitioner.

Russell A. Cline, Salt Lake City, for respondents.

WILKINS, Justice.

¶ 1 Brookside Mobile Home Park, Ltd. ("Brookside") seeks review of the decision of the court of appeals, *Brookside Mobile Home Park, Ltd. v. Peebles*, 2000 UT App 314, 14 P.3d 105, (1) affirming the trial court's denial of Brookside's summary judgment motion,

(2) affirming the trial court's grant of a directed verdict in favor of Sam and Harold Peebles on Brookside's unlawful detainer claim, (3) affirming the denial of attorney fees to Brookside, and (4) awarding attorney fees to the Peebles. Sam and Harold Peebles also seek review of the decision of the court of appeals upholding the jury verdict finding that Brookside did not unreasonably withhold approval of a prospective purchaser of the Peebles' mobile home. For the reasons set forth below, we affirm the court of appeals on all issues.

## BACKGROUND

¶ 2 Brookside operates a mobile home park ("Park") located in West Jordan, Utah. Sam and Harold Peebles (son and father, respectively) owned a mobile home which occupied a space in the Park. Sam Peebles ("Peebles") entered into a lease for the underlying Park space with a former owner of the Park, Brookside Associates ("Associates"), in 1983. After several leases and failed sales of the mobile home, Peebles entered into a lease with an option to buy the mobile home with Richard Rowley in May 1994, who, in turn, entered into a lease with Associates for the underlying Park space. In December 1994 a trust purchased the Park from Associates and acquired all of Associates' interest in some of the leases of mobile home space at the Park. In 1995 Brookside acquired its interest in the Park from the trust. Rowley entered into a lease agreement for the Park space with Brookside in April 1995, but abandoned the mobile home in the fall of 1995.

¶ 3 Sometime shortly after Rowley's abandonment of the mobile home, Peebles began paying rent to Brookside for the underlying Park space. On November 29, 1995, Brookside sent a notice to Peebles stating, "[Y]ou, as lien holder of record and now deemed a tenant at will are primarily liable to [Brookside] for all rent and service charges accruing ... if the mobile home is not moved." On December 11, 1995, Brookside sent Peebles a "Notice to Pay Rent or Quit," which stated, in relevant part, "Please take notice that the rent on the premises ... which you now possess as a tenant, is past due.... You must ... pay the rent now due and owing

... or, in the alternative, ... vacate the premises...." Around the same time, Brookside advised Peebles that repair work needed to be done on the mobile home to bring it into compliance with Park rules. In March 1996 Brookside informed Peebles, through counsel, that he would need to sign a new lease for the Park space with Brookside. Peebles did not sign a lease. On April 11, 1996, Brookside posted a "Notice to Quit" on Peebles' mobile home. The Notice demanded that Peebles remove the mobile home from the Park within five days under section 78–36–3 of the Utah Code or face an unlawful detainer action. Peebles did not move the mobile home and Brookside filed an unlawful detainer action against Sam and Harold Peebles. The Peebles answered and asserted as an affirmative defense, among other things, that Brookside had failed to comply with the fifteen-day notice requirement in the Utah Mobile Home Park Residency Act ("Residency Act"). *See* Utah Code Ann. § 57–16–6 (Supp.2001).

¶ 4 On September 25, 1996, Peebles entered into a contract to sell the mobile home to Jackie Southworth, subject to Brookside's approval of her Park residency application. Pursuant to Brookside's instructions, Southworth ordered a credit report, which was unable to verify her employment and bank information. Southworth submitted the credit report to Brookside. The Park manager told Southworth that her application for residency had been denied by the owner. As a result, the Peebles filed a counterclaim, alleging, among other things, that Brookside unreasonably withheld approval of Southworth's residency application, in violation of the Residency Act.

¶ 5 Brookside moved for summary judgment, arguing that because Peebles had no lease with Brookside, the Residency Act did not apply and that, consequently, under Utah's unlawful detainer statute, the five-day notice was sufficient. Brookside also asserted that as a bona fide purchaser of the Park, it had no notice of Peebles' lease and that, consequently, the lease was invalid as to Brookside, rendering the five-day notice sufficient. Peebles argued that because he had a lease with Associates, which had been as-

signed to Brookside, the Residency Act applied, and the five-day notice was therefore insufficient. The trial court determined that the claims turned on whether there was a lease between the parties. If so, then the Residency Act applied, and Brookside should have given the Peebles a fifteen-day notice; if not, Utah's unlawful detainer statute applied and Brookside's five-day notice was sufficient.

¶6 The trial court initially granted summary judgment for Brookside, holding that, as a matter of law, Peebles had surrendered his lease with the Park by virtue of his knowledge that the residents of his mobile home entered into leases for the same space with Brookside. Shortly thereafter, the Peebles filed a motion for reconsideration asking the trial court to reconsider the summary judgment ruling based on a supplemental affidavit which put Peebles' intent to surrender the lease into dispute. The trial court granted this motion, finding that the existence of a lease was a disputed issue of material fact, and overturned its previous summary judgment ruling. The matter proceeded to trial.

¶7 After Brookside presented its case, the Peebles moved for a directed verdict, arguing in part that, regardless of the existence of a lease, Sam Peebles was an "owner resident" of the mobile home, Utah Code Ann. § 78–36–3(2) (1996) ("Unlawful detainer by an owner resident of a mobile home is determined under [the Residency Act].”), and, as such, was entitled to a fifteen-day notice. The trial court granted the motion. The court also dismissed all claims against Harold Peebles, finding that Brookside had presented no evidence at trial of any involvement on his part.

¶8 Peebles then presented his counterclaims to the jury. Southworth testified that she had been prepared to explain the credit report deficiencies to Brookside, but had been denied an opportunity to do so and that the Park manager yelled at her when she protested Brookside's refusal to discuss the matter further. The Park manager testified that he is unable to yell due to throat cancer. The jury found (1) that Peebles had a lease with the Park before Brookside acquired it,

(2) that Peebles had not surrendered the lease, (3) that Brookside had not assumed the lease, and (4) that Brookside had not unreasonably withheld approval of Southworth's residency in the Park. Both parties filed motions for attorney fees and costs under the Residency Act, which the trial court denied.

¶9 Brookside appealed the trial court's reversal of its original summary judgment ruling, the grant of a directed verdict, and the denial of attorney fees and costs to the court of appeals. Peebles cross-appealed the jury's verdict that withholding approval of Southworth was not unreasonable and the denial of attorney fees and costs. The court of appeals reversed the trial court on the issue of attorney fees for Peebles, but affirmed on all other issues. The parties requested certiorari review, which this court granted.

## ISSUES PRESENTED

¶10 The parties present six issues for our review, specifically, whether the court of appeals erred in (1) holding that Brookside did not preserve its bona fide purchaser argument for appeal; (2) upholding the trial court's reversal of its summary judgment ruling; (3) affirming the trial court's grant of Peebles' motion for directed verdict; (4) affirming the trial court's denial of attorney fees for Brookside and in allowing attorney fees for Peebles; (5) disregarding Brookside's arguments that Harold Peebles should have been reinstated as a defendant; and (6) upholding the jury's finding that Brookside's rejection of a prospective buyer of Peebles' mobile home was reasonable.

## ANALYSIS

¶11 On certiorari, we review the decision of the court of appeals for correctness. *E.g., State v. Visser,* 2000 UT 88, ¶9, 22 P.3d 1242.

### I. PRESERVATION OF BONA FIDE PURCHASER ARGUMENT

¶12 In a footnote to its opinion, the court of appeals declined to address Brookside's bona fide purchaser argument, holding that, under *Badger v. Brooklyn Canal Co.,* 966

P.2d 844, 847 (Utah 1998), the issue had not been properly preserved for appeal. *Brookside Mobile Home Park, Ltd. v. Peebles,* 2000 UT App 314, ¶ 18 n. 3, 14 P.3d 105. Before addressing Brookside's arguments on this issue, we take this opportunity to clarify the requirements for preserving issues for appellate review.

¶ 13 One of Brookside's arguments before the court of appeals centered around its contention that it should have been granted summary judgment based on its bona fide purchaser theory. Brookside raised this theory before the trial court in support of its original motion for summary judgment, which the trial court granted. The court of appeals held that Brookside did not preserve this issue because it did not raise the argument again in response to Peebles' motion to reconsider the summary judgment ruling. In the eyes of the court of appeals, "[a]t that crucial point, Brookside did not give the trial court the opportunity to consider" the bona fide purchaser theory as a basis for denying the motion. *Brookside,* 2000 UT App 314 at ¶ 18 n. 3, 14 P.3d 105. With this view, the court of appeals stated, "Brookside has not properly preserved the bona fide purchaser issue for appeal, and we decline to address it." *Id.* (citing *Badger,* 966 P.2d at 847).

¶ 14 The court of appeals was correct to look to *Badger* to determine whether Brookside properly preserved the issue for appeal. As *Badger* explains, in order to preserve an issue for appeal the issue must be presented to the trial court in such a way that the trial court has an opportunity to rule on that issue. 966 P.2d at 847. *Badger* sets forth three specific factors which help determine whether the trial court had such an opportunity: "(1) the issue must be raised in a timely fashion; (2) the issue must be specifically raised; and (3) a party must introduce supporting evidence or relevant legal authority." *Id.* (citations and internal quotations omitted). While the court of appeals correctly cites *Badger* for the preservation standard, it misinterprets *Badger* as requiring an appellant to raise issues more than once at the trial court level, even after the trial court has already ruled on the issue. *Badger* does not require this. Under *Badger,* once trial counsel has raised an issue before the trial court, and the trial court has considered the issue, the issue is preserved for appeal. *See id.; see also, e.g., Sittner v. Schriever,* 2000 UT 45, ¶¶ 15–17, 2 P.3d 442 (holding that appellant need not have filed post-judgment motion to preserve issue for appeal where issue was briefed in summary judgment memorandum and other pleadings).

¶ 15 In the instant case, Brookside raised its bona fide purchaser argument before the trial court such that the court had an opportunity to rule on the issue. Specifically, Brookside raised the argument during the initial summary judgment phase of the trial court proceedings in its memorandum in support of motion for summary judgment and in its reply. Raising the issue in this fashion (1) was timely, (2) specifically raised the legal argument, and (3) provided relevant legal authority on the issue to the trial court. *See Badger,* 966 P.2d at 847. Thus, because the trial court had an opportunity to rule on the issue, in accordance with *Badger,* Brookside properly preserved this argument. *See id.*

¶ 16 Notwithstanding the fact that Brookside's bona fide purchaser argument was properly preserved, however, because the issue is moot we decline to address it. Ordinarily "we will not adjudicate issues when the underlying case is moot. A case is deemed moot when the requested judicial relief cannot affect the rights of the litigants." *Ellis v. Swensen,* 2000 UT 101, ¶ 25, 16 P.3d 1233 (citations and internal quotations omitted). The jury found that a lease existed between Peebles and the Park, and that the lease had not been surrendered. Brookside does not challenge these findings on appeal. The Residency Act provides that a mobile home park may not terminate a lease "upon any ground other than as specified in this chapter." Utah Code Ann. § 57–16–4(1) (Supp.2001). Therefore, the lease can be terminated only in accordance with the Act. The purchase of a mobile home park by a buyer who does not know about an existing lease or who assumes a lease—the essence of Brookside's bona fide purchaser argument—is not a ground specified in the Act. *See* § 57–16–5(1). Consequently, regardless of the viability of Brookside's bona

fide purchaser argument, summary judgment on that basis would be inappropriate. Because this issue cannot affect the rights of the parties, it is moot, and we decline to address it further. *See Ellis,* 2000 UT 101 at ¶ 25, 16 P.3d 1233.

## II.  TRIAL COURT'S REVERSAL OF SUMMARY JUDGMENT

■ ¶ 17 Brookside appears to argue that the court of appeals misstated the doctrine of surrender and asserts that the trial court's original grant of Brookside's motion for summary judgment should be reinstated. The trial court initially granted Brookside's summary judgment motion based on its understanding that under the doctrine of surrender, no lease existed between Brookside and Peebles and that, therefore, the Residency Act could not apply. The trial court reversed this ruling after Peebles clarified his position by submitting a supplemental affidavit alleging facts which showed that Peebles did not intend to surrender his lease. Brookside argues that under the doctrine of surrender, Peebles had no lease with Brookside as a matter of law and that, because no lease existed, the Residency Act did not apply and summary judgment in favor of Brookside was appropriate.

■ ¶ 18 Appellate courts review a trial court's grant of a motion to reconsider under an abuse of discretion standard. *See, e.g., Timm v. Dewsnup,* 921 P.2d 1381, 1386 (Utah 1996). While the court of appeals did not address whether the trial court abused its discretion in granting the motion to reconsider, there is no indication that the trial court did so. Trial courts have clear discretion to reconsider and change their position with respect to any orders or decisions as long as no final judgment has been rendered. *U.P.C., Inc. v. R.O.A. Gen., Inc.,* 1999 UT App 303, ¶ 55, 990 P.2d 945; Utah R. Civ. P. 54(b). Summary judgment is appropriate only where the evidence shows that there is no genuine issue of material fact and judgment is proper as a matter of law. Utah R. Civ P. 56(c). Based on our review of the evidence before the trial court at the time it granted the motion to reconsider, a question of material fact existed, specifically whether

Peebles surrendered the lease, and we see no abuse of discretion in the trial court's acknowledgment that its previous ruling was in error.

■■ ¶ 19 The correctness of the denial of summary judgment for Brookside turns on whether the doctrine of surrender looks at the intent of the parties in determining surrender. The court of appeals correctly stated the doctrine. *Brookside,* 2000 UT App 314 at ¶ 20, 14 P.3d 105 (quoting *Reid v. Mutual of Omaha Ins. Co.,* 776 P.2d 896, 900 (Utah 1989)). As the court of appeals explained, surrender requires that parties intend a surrender. *Id.* Surrender should not be inferred "against the intent of the parties...." *Belanger v. Rice,* 2 Utah 2d 250, 252, 272 P.2d 173, 174 (1954) (internal quotation omitted). Furthermore, "[t]he question of whether the acts and circumstances constituted a surrender ... is one for the fact finder." *Mariani Air Prods. Co. v. Gill's Tire Mkt.,* 29 Utah 2d 291, 293, 508 P.2d 808, 810 (1973). Thus, evidence that showed that Peebles did not intend to surrender his lease created a disputed issue of material fact as to whether a lease existed between the parties, rendering summary judgment inappropriate. Utah R. Civ P. 56(c). The trial court was correct to reverse its earlier summary judgment ruling on this basis and did not abuse its discretion in granting the motion to reconsider. We therefore affirm the court of appeals on this issue.

## III.  TRIAL COURT'S GRANT OF MOTION FOR DIRECTED VERDICT

¶ 20 Brookside argues that the court of appeals erred in holding that the Residency Act governed Brookside's unlawful detainer action. Brookside's position is based on its view that the Residency Act requires that for a mobile home tenant to claim the protections of the Residency Act, a written lease must exist between the lessee and lessor and that no such lease exists between Peebles and Brookside.

■ ¶ 21 In reviewing a trial court's grant of a directed verdict, appellate courts look to see if any evidence at trial raises a

question of material fact which would support a verdict in the non-moving party's favor and preclude a judgment as a matter of law. *Merino v. Albertsons, Inc.*, 1999 UT 14, ¶ 3, 975 P.2d 467. Section 78–36–3(2) of the Utah Code requires that "[u]nlawful detainer by an *owner resident* of a mobile home [be] determined under … [the] Mobile Home Park Residency Act." (emphasis added). If Peebles was an "owner resident" then Brookside was required to comply with the notice provisions of the Residency Act, regardless of the existence of a lease, rendering the trial court's grant of Peebles' motion for directed verdict proper.

¶ 22 There is no dispute over whether Peebles is an "owner." The Residency Act defines "resident" as "an individual who leases or rents space in a mobile home park." Utah Code Ann. § 57–16–3(3)(2000). As the court of appeals noted, "Brookside does not challenge the jury finding that Peebles had a written lease with the Park before Brookside brought the Park, nor does it challenge the finding that Peebles did not surrender the lease." *Brookside Mobile Home Park, Ltd. v. Peebles*, 2000 UT App 314, ¶ 28, 14 P.3d 105. Furthermore, it is undisputed that Peebles paid rent to Brookside after Rowley abandoned the mobile home, and the Notice to Pay Rent or Quit served by Brookside on December 11, 1995, referred to Peebles as a "tenant." Thus, as a matter of law, because Peebles leased or rented space in a mobile home park, Peebles is a "resident" under the Residency Act. § 57–16–3(3). Under these facts, it follows that Peebles is an "owner resident" under section 78–36–3 and an unlawful detainer action against him could only proceed under the Residency Act. The Residency Act provides for a fifteen-day notice period. § 57–16–5(2). Brookside provided only a five-day notice. Thus, because Brookside's notice was deficient, Peebles was entitled to judgment as a matter of law. We therefore affirm the court of appeals on this issue.

## IV. ATTORNEY FEES

■■ ¶ 23 Brookside argues that the court of appeals erred in affirming the trial court's denial of attorney fees to Brookside and in reversing the trial court's denial of attorney fees to the Peebles. Brookside's argument is premised on its view that the Peebles' counterclaim was raised pursuant to the Residency Act, which awards costs and fees to the prevailing party. Because Brookside was the prevailing party on this claim, the argument goes, it should be awarded fees for its successful defense of the claim. Additionally, because, as Brookside asserts, no written lease existed between the Peebles and Brookside, the Act was not applicable and an award of fees under the Act to the Peebles was improper.

■■■ ¶ 24 The court of appeals correctly stated the general rule that a party is entitled to attorney fees only if authorized by statute or contract. *E.g., R.T. Nielson Co. v. Cook*, 2002 UT 11, ¶ 17, 40 P.3d 1119. The Residency Act provides that residents who "contest an *eviction proceeding*" and are the prevailing party may collect attorney fees and costs. Utah Code Ann. § 57–16–8 (2000) (emphasis added). As the court of appeals noted, we look to the plain language of a statute when interpreting the statute. *Dairy Prod. Servs., Inc. v. City of Wellsville*, 2000 UT 81, ¶ 21, 13 P.3d 581. Based on the plain language of the attorney fee provisions of the Residency Act, it appears that the legislature intended prevailing parties to be able to collect fees and costs only when bringing or defending *eviction claims*.

¶ 25 Allowing parties to collect fees and costs for a claim having nothing to do with eviction but brought as part of an eviction proceeding goes contrary to this intent. The court of appeals correctly recognized that the Peebles' counterclaim, which dealt with Brookside's rejection of a prospective buyer of Peebles' mobile home, was not an *eviction proceeding*, even though it was brought as a counterclaim in an eviction proceeding. Because the counterclaim had no direct relationship with an eviction proceeding, the Residency Act provides no statutory basis upon which to award attorney fees to Brookside. *See* § 57–16–8. No other statutory or contractual basis for awarding fees has been argued by the parties. Therefore, in defending against Peebles' claim, Brookside is not entitled to fees and costs.

¶ 26 On the other hand, Brookside's claim was clearly an eviction proceeding. Therefore, as the successful parties, the Peebles are entitled to reasonable costs and fees in defending against this eviction proceeding at the trial court, court of appeals, and supreme court levels. *See, e.g., Valcarce v. Fitzgerald,* 961 P.2d 305, 319 (Utah 1998)("This court has interpreted attorney fee statutes broadly so as to award attorney fees on appeal where a statute initially authorizes them." (quoting *Salmon v. Davis County,* 916 P.2d 890, 895 (Utah 1996))). We therefore affirm the court of appeals on this issue and remand to the trial court to determine the amount of reasonable attorney fees and costs to be awarded the Peebles for their defense in the eviction proceeding at trial and on appeal.

## V. REINSTATING HAROLD PEEBLES AS A DEFENDANT

¶ 27 Brookside argues that the court of appeals erred in disregarding its arguments pertaining to Harold Peebles. The trial court dismissed the causes of action which pertained to Harold Peebles based on its specific findings that Brookside presented no evidence at trial that indicated any involvement on the part of Harold Peebles. While Brookside mentioned that Harold Peebles was dismissed as a defendant in its brief to the court of appeals, it did not raise *any* argument accompanied by legal authority addressing the trial court's dismissal of Harold Peebles as a defendant. Brookside simply asserts that Harold was a co-owner. As Brookside's argument was not adequately briefed before the court of appeals disputing this dismissal, we find no error in the court of appeals' alleged failure to address Harold Peebles' status. *See, e.g., Springville Citizens for a Better Cmty. v. City of Springville,* 1999 UT 25, ¶ 21 n. 2, 979 P.2d 332 (noting that appellate courts need not address issues where plaintiffs fail to brief them adequately).

## VI. BROOKSIDE'S REJECTION OF PROSPECTIVE BUYER

¶ 28 In his cross-petition Peebles argues that the court of appeals erred in upholding the jury's finding that Brookside did not unreasonably withhold approval of Southworth's residency in the Park. The Residency Act requires that approval of a prospective buyer of a mobile home "may not be unreasonably withheld." Utah Code Ann. § 57–16–4(4)(2000). Peebles asserts that Brookside's withholding of approval was per se unreasonable as Brookside refused to meet with Southworth to allow her to fill out a residency application.

¶ 29 We find no error in the court of appeals' ruling on this issue. The court of appeals used the correct standard of review in addressing this issue:

" '[W]e view the evidence in the light most supportive of the verdict, and assume that the jury believed those aspects of the evidence which sustain its findings and judgment.... [W]e will upset a jury verdict only upon a showing that the evidence so clearly preponderates in favor of the [cross] appellant that reasonable people would not differ on the outcome of the case.' "

*Brookside Mobile Home Park, Ltd. v. Peebles,* 2000 UT App 314, ¶ 37, 14 P.3d 105 (quoting *Billings v. Union Bankers Ins. Co.,* 918 P.2d 461, 467 (Utah 1996)).

¶ 30 In appealing the jury verdict, the Peebles have failed to properly marshal all evidence supporting the jury verdict and explain how, in spite of this evidence, the jury verdict should be overturned. *See, e.g., Child v. Gonda,* 972 P.2d 425, 433 (Utah 1998) ("[T]he one challenging the verdict must marshal the evidence in support of the verdict and then demonstrate that the evidence is insufficient when viewed in the light most favorable to the verdict." (citations omitted)). The Peebles argue that because the Residency Act requires that approval of prospective purchasers "may not be unreasonably withheld," § 57–16–4(4), a refusal to meet with or accept an application from a prospective resident violates the Residency Act as a matter of law. The Peebles further argue that Brookside's refusal to meet with Southworth is the only evidence they need to marshal to overturn the jury's verdict. We do not agree.

¶ 31 The Peebles do not adequately address evidence in the record that Brookside had allowed Southworth to begin the application process by sending a credit report to the Park and that the Park had looked at the report. Alan Glover, the owner of the Park, testified that he had seen Southworth's credit report and that it could not verify Southworth's income and employment, two items which were "very important" in considering rental applications. While the Peebles argue that Southworth was prepared to discuss and explain her credit report deficiencies, they do not address evidence suggesting that Southworth's testimony could have been disbelieved by the jury. As the court of appeals noted, "the jury was free to disbelieve [Southworth] and to believe Brookside's witnesses to the contrary." *Brookside*, 2000 UT App 314 at ¶ 38, 14 P.3d 105.

¶ 32 Despite the Peebles' efforts to have us hold otherwise, this review does not require us to determine the parameters of what is reasonable for purposes of section 57–16–4(4) of the Residency Act. The fact that the jury found that Brookside's withholding of approval was reasonable, and that this finding is supported by some evidence, is enough to permit us to uphold the jury verdict. *See Billings*, 918 P.2d at 467–68. By failing to marshal this evidence and demonstrate its insufficiency, the Peebles have failed to meet their marshaling burden. *See Child*, 972 P.2d at 433. We therefore affirm the court of appeals' holding on this issue.

## CONCLUSION

¶ 33 Because the court of appeals committed no error, we affirm the court of appeals on all issues and remand to the trial court to determine the reasonable amount of attorney fees and costs to be awarded the Peebles for their defense of the eviction proceeding at the trial court, court of appeals, and supreme court levels.

¶ 34 Chief Justice DURHAM, Associate Chief Justice DURRANT, Justice HOWE, and Justice RUSSON concur in Justice WILKINS' opinion.