2006 UT App 116

STATE of Utah, Plaintiff and Appellee,

v.

Mark Duane WORKMAN, Defendant and Appellant.

No. 20040972–CA.

Court of Appeals of Utah.

March 23, 2006.

Margaret P. Lindsay, Orem, for Appellant.

Mark L. Shurtleff, Attorney General's Office, and Christopher D. Ballard, Assistant Attorney General, Salt Lake City, for Appellee.

Before Judges BENCH, GREENWOOD, and BILLINGS.

## OPINION

BILLINGS, Judge:

¶ 1 Defendant Mark Duane Workman appeals from his conditional no contest plea to one count of theft by receiving stolen property, a class A misdemeanor. *See* Utah Code Ann. § 76–6–408 (Supp.2005). Defendant argues that the trial court erred in denying his motion to dismiss for improper venue or, in the alternative, his motion to quash bindover order. We affirm.

## BACKGROUND

¶ 2 On December 13, 1999, Rebecca Roberts's black 1998 Mitsubishi Mirage was stolen from the street in front of her home in Salt Lake County. Roberts does not know Defendant and never gave him permission to have the vehicle.

¶ 3 On January 7, 2000, Officer Todd Mallinson was on routine patrol in the area of 1200 West and Center Street in Orem, Utah, which is located in Utah County, when he observed a woman talking on a pay phone. Officer Mallinson became suspicious of the woman because she appeared "very nervous" and was making "quick movement[s]." Officer Mallinson set up surveillance across the street from the woman, watched her leave in a black Mitsubishi Mirage, and began following her as she pulled out. He observed her make a wide turn onto Center Street, go through several lanes of traffic, and enter the I-15 freeway. Officer Mallinson also observed her cross the fog line several times and attempt to exit on the 1200 South exit in Orem. The woman's erratic driving caused Officer Mallinson to believe that she may have been intoxicated or under the influence of a controlled substance. Officer Mallinson pulled the woman over on I-15 near the 1200 South University Parkway exit in Orem. During the stop, the woman identified herself as Holly Armstrong.

¶ 4 Officer Mallinson ran a routine check on the vehicle and discovered that it was stolen. He arrested Armstrong for possession of a stolen vehicle, and after waiving her Miranda rights, she agreed to speak with him.

¶ 5 Armstrong told Officer Mallinson that Defendant, a friend of hers, had "loaned her the vehicle." She explained that she picked the car up from Defendant's residence in Salt Lake County at about 5:00 p.m. the previous day and then "made a few stops and [went] to a party." Armstrong also told Officer Mallinson that she had just called Defendant on the pay phone because "she didn't want to go back to Salt Lake." Upon Officer Mallinson's request, Armstrong provided Defendant's telephone number to verify her story, and Officer Mallinson used his cell phone to call Defendant. Although Officer Mallinson

did not know Defendant's physical location at the time of the phone call, he assumed Defendant was at his residence in Salt Lake County.

¶ 6 During their conversation, Defendant said that he loaned Armstrong the vehicle. Officer Mallinson then asked if Defendant knew that the vehicle was stolen. Defendant answered no and said that he owned the vehicle. According to Defendant, he purchased the vehicle from a man named Travis for a total of $3600. Defendant said that he had paid $900, but that he still owed the remaining amount. Officer Mallinson then asked Defendant how he could contact Travis, and Defendant responded that he didn't know but that he thought Travis might be "in prison or jail." Defendant also said that while he was unsure of Travis's last name, it would be on the title in the glove box.

¶ 7 Officer Mallinson retrieved the title from the glove box bearing the name Travis Daddow and informed Defendant that the title was to a 1979 Volkswagen. Defendant responded that he "[hadn't gotten] around to looking at it close." At some point during the conversation, Defendant again asked with whom he was speaking and Officer Mallinson replied, "Detective Todd Mallinson from Utah County Major Crimes." The conversation ended when Officer Mallinson said he would call Defendant back if he needed any more information.

¶ 8 Officer Mallinson then transported Armstrong to the Utah County Jail and the stolen car to the Pleasant Grove Police Department for an inventory search.

## ISSUE AND STANDARD OF REVIEW

¶ 9 Defendant argues that the trial court erred in denying his motion to dismiss for improper venue or, in the alternative, his motion to quash bindover order. Specifically, the issue presented is whether Utah County was a proper venue for Defendant's theft by receiving stolen property charge.

¶ 10 This issue involves "the application of law to fact or, stated more fully, the determination of whether a given set of facts comes within the reach of a given rule of law." *State v. Pena*, 869 P.2d 932, 936 (Utah

1994). Under this standard, the "trial court's factual findings are reviewed deferentially under the clearly erroneous standard, and its conclusions of law are reviewed for correctness with some discretion given to the application of the legal standards to the underlying factual findings." *State v. Loya*, 2001 UT App 3, ¶ 6, 18 P.3d 1116.

## ANALYSIS

¶ 11 Defendant argues that the trial court erred in denying his motion to dismiss for improper venue or, in the alternative, his motion to quash bindover order, because he did not have control over the stolen vehicle in Utah County. Alternatively, Defendant contends that Utah County was an improper venue because all of the elements of the crime charged occurred in Salt Lake County.

¶ 12 Utah's venue statute, Utah Code section 76-1-202, states in pertinent part:

(1) Criminal actions shall be tried in the county, district, or precinct where the offense is alleged to have been committed. In determining the proper place of trial, the following provisions shall apply:

. . . .

(b) When conduct constituting elements of an offense or results that constitute elements, whether the conduct or result constituting elements is in itself unlawful, shall occur in two or more counties, trial of the offense may be held in any of the counties concerned.

. . . .

(g) When an offense is committed within this state and it cannot be readily determined in which county or district the offense occurred, the following provisions shall be applicable:

. . . .

(iii) A person who commits theft may be tried in any county in which he exerts control over the property affected.

Utah Code Ann. § 76-1-202(1)(b), (g)(iii) (Supp.2005).

¶ 13 In determining which subsection of section 76-1-202(1) applies, it is clear that the parties do not agree in which county the offense occurred. Defendant argues that

the elements of the crime occurred solely in Salt Lake County whereas the State maintains that the elements of the crime occurred in both Salt Lake and Utah Counties. This dispute does not allow us to "readily determine[ ] in which county . . . the offense occurred." *Id.* § 76–1–202(1)(g). Consequently, we apply subsection (1)(g)(iii) to determine whether venue in Utah County was proper.[1]

¶ 14 Moreover, we follow the rule of statutory construction, which provides that "the specific governs the general." *Southern Utah Wilderness Alliance v. Board of State Lands & Forestry,* 830 P.2d 233, 235 (Utah 1992). Because section 76–1–202(1)(g)(iii) is specific to the crime of theft, *see* Utah Code Ann. § 76–1–202(1)(g)(iii), it applies over the more general subsection (1)(b). Accordingly, Defendant may be tried "in any county in which he exert[ed] control over the [vehicle]." *Id.*

¶ 15 Defendant argues that he did not have control over the vehicle in Utah County because he relinquished control when he loaned the vehicle to Armstrong.[2] Pursuant to section 76–1–202(1)(g)(iii), *see id.,* we must decide whether Defendant had control over the vehicle in Utah County. We conclude that he did.

¶ 16 In an attempt to define "control," both Defendant and the State argue that Defendant either did or did not have constructive possession of the vehicle. However, we find this analysis unnecessary. The Utah venue statute at issue says nothing about possession of the vehicle. Instead, the statute simply provides that Defendant may be tried "in any county in which he exert[ed] *control* over the [vehicle]." *Id.* (emphasis added).[3]

¶ 17 In determining the meaning of "control," as used in section 76–1–202(1)(g)(iii), *id.,* we conclude that whether a person has "control" depends on the specific set of facts in a given case. *See State v. Fox,* 709 P.2d 316, 319 (Utah 1985) ("In every case, the determination that someone has constructive possession of drugs is a factual determination

---

1. In *State v. Cauble,* 563 P.2d 775 (Utah 1977), the Utah Supreme Court reviewed a similar venue dispute under subsection (1)(b). We find that subsection (1)(g)(iii) is more applicable in this case and note that the result would not change if we were to analyze this case under subsection (1)(b).

2. In support of this argument, Defendant asserts that when he passed possession of the car to Armstrong, he disposed of the car through a bailment that occurred in Salt Lake County. However, this bailment claim was not preserved below for appeal. While Defendant did argue at the trial court level that he never had control of the vehicle in Utah County, he never argued that he lacked control because he had created a bailment when he loaned the car to Armstrong. " '[I]n order to preserve an issue for appeal[,] the issue must be presented to the trial court in such a way that the trial court has an opportunity to rule on that issue.' " *438 Main St. v. Easy Heat, Inc.,* 2004 UT 72,¶ 51, 99 P.3d 801 (alterations in original) (quoting *Brookside Mobile Home Park, Ltd. v. Peebles,* 2002 UT 48,¶ 14, 48 P.3d 968). "This requirement puts the trial judge on notice of the asserted error and allows for correction at that time in the course of the proceeding." *Id.* To allow the trial judge the opportunity to rule on a particular issue, " '(1) the issue must be raised in a timely fashion[,] (2) the issue must be specifically raised[,] and (3) the challenging party must introduce supporting evidence or relevant legal authority.' " *Id.* (quoting *Brookside,* 2002 UT 48 at ¶ 14, 48 P.3d 968).

Defendant never specifically argued the creation of a bailment in either his motion to dismiss or in oral argument. Therefore, the only way that Defendant could potentially raise his bailment argument on appeal is if we were to find that " 'the trial court committed plain error or exceptional circumstances exist.' " *State v. Pinder,* 2005 UT 15,¶ 45, 114 P.3d 551 (quoting *State v. Nelson–Waggoner,* 2004 UT 29,¶ 16, 94 P.3d 186). Defendant has not asserted "plain error" or "exceptional circumstances" to require this court to consider his unpreserved bailment claim. Therefore, we will not review Defendant's argument that he lacked control of the vehicle in Utah County because he created a bailment when he loaned the vehicle to Armstrong.

3. Utah's theft by receiving stolen property statute, *see* Utah Code Ann. § 76–6–408 (Supp.2005), also focuses on a defendant's control of the stolen property. It reads, in pertinent part:

(1) A person commits theft if he receives, retains, or disposes of the property of another knowing that it has been stolen, or believing that it probably has been stolen. . . .
(2) The knowledge or belief required for Subsection (1) is presumed in the case of an actor who:
   (a) is found in possession *or control* of other property stolen on a separate occasion. . . .
*Id.* § 76–6–408(1)–(2)(a) (emphasis added).

which turns on the particular circumstances of the case."). When reviewing the facts, we note that there is no set of prescribed factors that would necessarily amount to a finding of control. *See State v. Layman*, 1999 UT 79,- ¶ 15, 985 P.2d 911 (observing "that there is some danger in mechanically relying on a list of factors ... when applying a generally-worded test").

¶ 18 We afford the trial court deference in its application of facts to the venue statute. Under this standard, we conclude it was reasonable for the trial court to find Defendant had control over the vehicle in Utah County. Although Armstrong was driving the car in Utah County, she felt obligated to call Defendant to tell him that she did not want to return the car to Salt Lake County. Clearly, Armstrong felt she needed Defendant's permission to keep the car in Utah County. Moreover, when Officer Mallinson called Defendant about the car, Defendant said that he had purchased the vehicle and that he had loaned the vehicle to Armstrong. As the presumed owner of the car, Defendant merely loaned the vehicle to Armstrong; he re-tained ultimate control over the vehicle while Armstrong drove the car in Utah County. According to these facts and reasonable inferences, it was reasonable for the trial court to conclude that Defendant had control of the vehicle in Utah County.

## CONCLUSION

¶ 19 We hold that the trial court did not err in denying Defendant's motion to dismiss for improper venue or, in the alternative, his motion to quash bindover order. Accordingly, we affirm.

¶ 20 WE CONCUR: RUSSELL W. BENCH, Presiding Judge and PAMELA T. GREENWOOD, Associate Presiding Judge.