IN THE UTAH COURT OF APPEALS

----ooOoo----

| | | |
|---|---|---|
| State of Utah, | ) | OPINION |
| | ) | |
| Plaintiff and Appellant, | ) | Case No. 20100077-CA |
| | ) | |
| v. | ) | |
| | ) | F I L E D |
| Randall Matthew Relyea, | ) | (February 24, 2012) |
| | ) | |
| Defendant and Appellee. | ) | 2012 UT App 55 |

-----

Fourth District, Provo Department, 081403708
The Honorable Samuel D. McVey

Attorneys: Mark L. Shurtleff and Jeffrey S. Gray, Salt Lake City, for Appellant
Douglas J. Thompson, Provo, for Appellee

-----

Before Judges McHugh, Davis, and Roth.

McHUGH, Presiding Judge:

¶1     The State of Utah appeals from an interlocutory order granting the defense's motion to suppress breath alcohol concentration results from an Intoxilyzer 8000 machine (Intoxilyzer). The State argues that the trial court erred in ruling that a foundational requirement for the admission of Intoxilyzer results, a fifteen-minute observation period, was not satisfied. In the alternative, the State contends that the trial court erred in excluding the test results because the fifteen-minute observation period required by *State v. Vialpando*, 2004 UT App 95, 89 P.3d 209, should no longer be required due to changes in equipment and technology. We reverse and remand.

BACKGROUND

¶2     On November 18, 2008, the Springville Police Department received a tip that an intoxicated driver was in a white car without license plates and proceeding westbound on River Bottom Road.  Two patrol officers spotted a vehicle matching the description and attempted to pull it over.  After a short pursuit, the vehicle pulled into the parking lot of a liquor store and stopped.  As officers approached the vehicle, it started to roll back toward the officers' car.  While one officer prevented the vehicle from rolling any further, the other officer instructed the driver to engage his emergency brake.  After the car was stopped, the officers determined that the driver was Randall Matthew Relyea.

¶3     While talking to Relyea, the officers noticed that his eyes were bloodshot and that his speech was slow and slurred, and at least one officer could smell alcohol on Relyea's breath.  However, Relyea denied that he had been drinking.  After performing three field sobriety tests, the officers determined that Relyea was too impaired to drive.  Another officer (the Arresting Officer), who arrived at the scene during the field sobriety tests, then cuffed Relyea's hands behind his back and placed him under arrest.

¶4     Following the requirements of *State v. Baker*, 355 P.2d 806 (Wash. 1960), applied by the Utah Supreme Court in *Salt Lake City v. Womack*, 747 P.2d 1039 (Utah 1987), the Arresting Officer inspected Relyea's mouth to insure that it was free from "foreign objects."  The officer made Relyea spit out chewing tobacco and then rechecked his mouth, determining that it was empty.  The Arresting Officer informed dispatch that the mouth inspection was performed at 3:07 p.m.  Afterwards, the Arresting Officer transported Relyea to the police station in the backseat of a patrol car.  Although he could see Relyea through his rearview mirror, the Arresting Officer admitted that he would not have noticed if Relyea "burped or regurgitated" during the drive.  At 3:12 p.m., the Arresting Officer and Relyea arrived at the police station.  From that point forward, the Arresting Officer was able to observe Relyea, who was still handcuffed.  The Arresting Officer did not recheck Relyea's mouth for foreign objects after arriving at the police station.  At 3:28 p.m., the Arresting Officer administered the Intoxilyzer test.  The results indicated that Relyea had a breath alcohol content of 0.237.

¶5     The State charged Relyea with driving under the influence of alcohol or drugs pursuant to Utah Code section 41-6a-502. *See* Utah Code Ann. § 41-6a-502 (2010).[1] Subsequently, Relyea filed a Motion to Suppress Intoxilyzer Results, arguing that he was not adequately observed for fifteen minutes prior to the administration of the test. Specifically, Relyea asserted that the Arresting Officer would not have noticed if Relyea burped or regurgitated in the backseat of the patrol car. In response, the State argued that the Arresting Officer's observation of Relyea during the twenty-one minute period between the arrest and the test was with sufficient "clarity and accuracy" to satisfy the *Baker* standard.[2] In reply, Relyea requested an evidentiary hearing to determine whether Relyea "burped or regurgitated between the time [the Arresting Officer] checked [his] mouth and transported him to the police station to perform the [I]ntoxilyzer test."

¶6     The court granted the request and held an evidentiary hearing on June 15, 2009. At that hearing, Relyea testified that he suffered from gastroesophageal reflux disease, commonly referred to as GERD, that caused him to "belch or regurgitate up through the back of [his] throat when . . . sleeping . . . [and] during the day." Relyea also explained that his symptoms were aggravated by alcohol use but that he could "mask" and "control" his symptoms so that there might not be sounds or other signs that he was experiencing the symptoms. Relyea stated that while seated in the backseat of the patrol car, he "was having severe regurgitation and belching" but quickly swallowed down any residue. Relyea did not notify the Arresting Officer of his condition. Further, Relyea could not recall when exactly he experienced these symptoms or whether he was burping "while breathing on the [Intoxilyzer]." Relyea did testify, however, that when drinking alcohol his condition is "almost constant."

---

[1]Because the material provisions of the statute have not changed, we cite the current version of the Utah Code Annotated for the convenience of the reader.

[2]Although it was initially assumed that the observation period was twenty-two minutes, it was later determined that only twenty-one minutes passed between Relyea's arrest and the administration of the Intoxilyzer test. Because this one-minute time difference does not affect our analysis, all references to the time have been made uniform to avoid confusion.

¶7    On June 18, 2009, the trial court entered a Ruling and Order on Defendant's Motion to Suppress Intoxilyzer Results, granting Relyea's motion.  The court reasoned that under *State v. Vialpando*, 2004 UT App 95, 89 P.3d 209 (applying the requirements of *Baker*, 355 P.2d at 809-10), the ride to the police station with Relyea in the backseat "impeded the [Arresting Officer's] powers of observation[]" because the Arresting Officer would not have noticed if Relyea was burping or regurgitating. *See id.* ¶ 18 (holding that the purpose of the observation period is met if three criteria are satisfied, including that the "officer's powers of observation" were not impeded).  Accordingly, the court determined that the State had not established the foundation required for the admission of the Intoxilyzer results.  Even without the Intoxilyzer results, however, the court determined that there was "sufficient evidence to support probable cause to go to trial."

¶8    In response to the court's ruling, on July 16, 2009, the State filed a Notice of Intent to Appeal and Motion for Leave to Supplement the Record.  In this Motion, the State requested that the court allow the State to supplement the record with expert testimony to demonstrate that, unlike the Breathalyzer machine (Breathalyzer) that was involved in *Baker*, the Intoxilyzer used to test Relyea did not require a fifteen-minute observation period to ensure an accurate result.  The State conceded, however, that the court was bound to follow the holding of *Vialpando* because that case applied the analysis of *Baker* to Intoxilyzers.[3]  The trial court scheduled an evidentiary hearing for August 10, 2009. In response, Relyea filed a motion to strike the evidentiary hearing, requesting instead that the trial court hold oral arguments on the issue of whether the State should be allowed to supplement the record.  While the trial court did not strike the evidentiary hearing, it issued an order stating, "The Evidentiary Hearing scheduled for August 10, 2009, will proceed after Oral Arguments on [the] State's Motion to Supplement [the] Record if the defense motion is denied.  If the defense motion is granted, the evidentiary hearing will be stricken."  Thus, the trial court left open the possibility that the record would be reopened and additional evidence admitted.

---

[3]In this motion, the State incorrectly indicated that *Salt Lake City v. Womack*, 747 P.2d 1039 (Utah 1987), also applied the analysis of *State v. Baker*, 355 P.2d 806, 809-10 (Wash. 1960), to Intoxilyzers.  However, the *Womack* decision actually involved test results from Breathalyzers. *Id.* at 1040-42.

¶9    At the August 10, 2009 hearing, the State modified its earlier position and expressly requested that the trial court reconsider its June 18, 2009 ruling, in addition to permitting the State to supplement the record. The court initially denied the State's motion to supplement the record because it was unaware of any facts or law in its original ruling that it had misconstrued. However, the trial court allowed the State to "do an offer of proof by putting on the evidence so [the State could] preserve [the evidence]."

¶10    After allowing the evidence as an offer of proof, the trial court explained its initial ruling on the *Baker* issue by stating, "[*Relyea*] *testified he regurgitated*, and I know we put that in our findings of fact, *but that doesn't really matter. What matters is the officer* . . . said [he] *wasn't observing* [*Relyea*] *during this* [*twenty-one-*]*minute* [*period*;] . . . he admitted that." (Emphasis added.) The State then proffered the following evidence through counsel:

> [The Arresting Officer] took *Baker* at [3:07 p.m. when the Arresting Officer] was six blocks away from the police station. And according to the log from dispatch, he arrived there at the police station at [3:12 p.m.] That's five minutes. From [3:12 p.m.] to [3:28 p.m.] . . . that's [sixteen] minutes. . . . *It seems to me that the Court's ruling was having to do with when he was in the vehicle, not under observation. We still have* [*sixteen*] *minutes . . . from when he left the vehicle*.[4]

(Emphasis added.) Upon hearing the proffer, the trial court stated, "Now, that would be a ground for reconsideration if I misconstrued that fact." In response to Relyea's argument that the State had not presented this evidence at the prior suppression hearing, the trial court ruled that the Arresting Officer could testify as to the facts in the State's proffer as an additional "offer of proof." The court indicated, however, that it would not "change the ruling unless [the State could] show that [the court] misconstrued the record somewhere, then [the court would] be happy to change it."

---

[4]The times mentioned in this quote were changed from military time for the reader's convenience and to correct the initial confusion about the time mentioned *supra* note 2.

¶11    The State called the Arresting Officer, who testified that he placed Relyea in the back of the patrol car at 3:07 p.m. and that they arrived at the police station at 3:12 p.m. After arriving at the police station, Relyea's hands were still cuffed behind his back, and the Arresting Officer "kept [his] eye on [Relyea] the whole time before administering the test." According to the Arresting Officer, he was within about five feet of Relyea from the time they arrived at the police station until Relyea took the Intoxilyzer test, a period of sixteen minutes. During that time, the Arresting Officer never heard or saw Relyea belch or regurgitate, nor did Relyea tell the Arresting Officer that he had belched or regurgitated. On cross-examination, the Arresting Officer admitted that he had not asked Relyea if he had burped or regurgitated while waiting at the police station before the test.

¶12    Next, the State called James Brierly, an alcohol technician with the Utah Highway Patrol (the Technician). The Technician maintained and certified breath alcohol instruments and was familiar with the mechanics of the Breathalyzer—the machine used in *Baker*— and the Intoxilyzer used to test Relyea. The Technician testified that breath alcohol instruments attempt to measure "deep lung air," rather than mouth air, and that this was important because mouth alcohol is volatile and can "spike" measurements, leading to inaccurate results. The Technician noted that a fifteen-minute observation period was necessary for the older Breathalyzer in order to allow alcohol to dissipate from the mouth and to prevent erroneous results. In contrast, the Technician explained that the Intoxilyzer had a slope detector that would disallow a test if any mouth alcohol was detected, thereby preventing erroneous test results. Thus, the Technician opined that a fifteen-minute observation period was not necessary to ensure the accuracy of Intoxilyzer results, but was still good practice to avoid delays caused by a disallowed test. After the State's presentation of evidence, Relyea cross-examined the Technician but he declined the trial court's invitation to offer his own evidence. The court then continued oral argument regarding the State's motion to supplement the record with the new evidence provided by the Arresting Officer and the Technician to a later date.

¶13    On November 9, 2009, oral arguments resumed. At that hearing, the State focused its argument on whether the fifteen-minute observation period required by *Baker* should be required for newer machines, like the Intoxilyzer used to test Relyea. The State again asked the trial court to reconsider its prior ruling in light of the additional evidence and Relyea objected. Ultimately, the trial court allowed the State to

"augment the record" with the additional evidence, explaining that it was "coming in." The trial court then offered Relyea the opportunity "to put anything in the record at this point because this is really your only opportunity to bring in an expert on this . . . so that the issue could be properly framed and there would be an adversarial presentation of evidence." After clarifying that the trial court still intended to exclude the Intoxilyzer results under *Vialpando*, Relyea decided not to present expert testimony concerning the need for a fifteen-minute observation period or to put anything else in the record.

¶14    On January 7, 2010, the trial court issued its Findings of Fact, Conclusions of Law, and Order, and included without objection the State's evidence presented at the August 10, 2009 hearing. The trial court found that Relyea was burping and regurgitating on the five-minute ride to the police station; it did not make any finding that Relyea burped at any time thereafter. Rather, the trial court found that after arriving at the police station, the Arresting Officer did not hear or see Relyea burp or regurgitate, but also did not ask Relyea whether he burped or regurgitated. Although it made these additional factual findings, the trial court did not change its earlier ruling suppressing the Intoxilyzer results. Instead, the trial court reincorporated its reasoning from the June 18, 2009 ruling, concluding that the Arresting Officer had not met the *Baker* observation requirement. With regard to the State's contention regarding the continuing utility of the *Baker* standard, the trial court held that *Vialpando* required a fifteen-minute observation period before Intoxilyzer results could be admitted.[5] Accordingly, it again granted Relyea's motion to suppress the Intoxilyzer results. On interlocutory appeal, the State now challenges the trial court's second ruling.

ISSUES AND STANDARDS OF REVIEW

---

[5]While this court's decision in *State v. Vialpando*, 2004 UT App 95, 89 P.3d 209, assumes that *Baker*'s fifteen-minute observation requirement for Breathalyzers applies equally to Intoxilyzers, there is no indication in the opinion that the differences between the two technologies were brought to the *Vialpando* court's attention. *See Vialpando*, 2004 UT App 95, ¶¶ 13-19. In fact, the *Vialpando* court appears to have used the terms Breathalyzer and Intoxilyzer interchangeably. For instance, the court parenthetically described the 1960 *Baker* decision as "articulating foundation elements for [I]ntoxilyzer tests." *See id.* ¶ 14. However, the *Baker* decision addressed the foundation requirements for Breathalyzers, not Intoxilyzers. *See Baker*, 355 P.2d at 809.

¶15 On appeal, the State argues that the trial court erred in refusing to admit Intoxilyzer test results because the fifteen-minute observation period required by *Vialpando* was satisfied by the Arresting Officer's continuous observation of Relyea for sixteen minutes. A trial court's determination that there was not a proper foundation for the admission of evidence will not be overturned "unless there is a showing of an abuse of discretion." *Id.* ¶ 13 (internal quotation marks omitted).

¶16 In the alternative, the State argues that the trial court erred in applying *Vialpando*'s fifteen-minute observation requirement to Intoxilyzer test results because technological changes obviate the need for the requirement. "[W]e consider the trial court's interpretation of binding case law as presenting a question of law and review the trial court's interpretation of that law for correctness." *State v. Stewart*, 2011 UT App 185, ¶ 6, 257 P.3d 1055 (internal quotation marks omitted), *cert. denied*, 263 P.3d 390 (Utah 2011).


ANALYSIS

I. The State's Argument that the Arresting Officer Satisfied the Fifteen-Minute Observation Period Is Preserved

¶17 Before addressing whether the *Baker* requirements were satisfied by the Arresting Officer's sixteen-minute observation, we consider whether the State properly preserved this argument. Relyea argues that the State abandoned this argument during the November 9, 2009 hearing before the trial court. "[I]n order to preserve an issue for appeal[,] the issue must be presented to the trial court in such a way that the trial court has an opportunity to rule on that issue." *Brookside Mobile Home Park, Ltd. v. Peebles*, 2002 UT 48, ¶ 14, 48 P.3d 968. To ensure that an issue is properly presented before the trial court "(1) the issue must be raised in a timely fashion; (2) the issue must be specifically raised; and (3) a party must introduce supporting evidence or relevant legal authority." *Id.* (internal quotation marks omitted). "[O]nce trial counsel has raised an issue before the trial court, and the trial court has considered the issue, the issue is preserved for appeal," and trial counsel does not need to raise the issue repeatedly. *See id.* While it is a close question, we are satisfied that the State adequately preserved this issue.

¶18  On May 11, 2009, Relyea filed his motion to suppress the Intoxilyzer results. Relyea claimed that the test results were inadmissible because the Arresting Officer did not adequately observe Relyea on the ride to the police station and would not have noticed if Relyea burped or regurgitated. Nowhere in his motion and memorandum in support did Relyea assert that he, in fact, burped or regurgitated on the ride to the police station. In the State's June 1, 2009 opposition memorandum, it argued that the *Baker* observation period was satisfied during the entire twenty-one-minute period—3:07 p.m. to 3:28 p.m.— from the time of arrest to the administration of the Intoxilyzer test. At that time, the State did not argue that there were sixteen minutes of continuous observation after arrival at the police station. In Relyea's reply, he requested an evidentiary hearing "to present evidence regarding the issue of whether [Relyea] burped or regurgitated" on the ride to the police station. For the first time at that hearing, Relyea presented evidence that he suffered from gastroesophageal reflux disease and that he had regurgitated during transport. Based on this evidence, the trial court issued its June 18, 2009 ruling suppressing the Intoxilyzer results.

¶19  The State responded with a motion to supplement the record. During the ensuing August 10, 2009 hearing, the State asserted both that the Arresting Officer had complied with *Baker* by observing Relyea for sixteen minutes after arriving at the police station and that the *Baker* test should be limited to Breathalyzers. With respect to the first issue, the State offered the testimony of the Arresting Officer, who testified that he and Relyea arrived at the police station at 3:12 p.m., and that he "had [Relyea] sitting on a bench with his hands behind his back[,] and [that he] was about five feet to the west of [Relyea], directly west of [Relyea] where [he] could stand and watch him profile-wise the entire time." At the end of this hearing, the trial court deferred the argument on whether the record should actually be supplemented with this evidence, in order to allow both parties to compare the new testimony with the evidence presented at the initial suppression hearing. At the subsequent hearing on November 9, 2009, the State made several statements that Relyea argues resulted in a waiver of its argument that the Arresting Officer's sixteen-minute observation of Relyea after they arrived at the police station satisfied *Baker*. However, when viewed in the context of the State's arguments, we are not convinced that the State intended to abandon this argument or that Relyea or the trial court were convinced otherwise.
¶20  For instance, the State noted,

> *Baker* addresses a[ Breathalyzer] from back in 1959. That
> machine has changed so drastically in the years since [then]
> that *Baker* has not looked at this issue. So that's what we're
> asking. We don't think that you're bound by that holding.
> And so, therefore, *you could* go ahead and take a look at the
> evidence that we provided to the Court and find that the
> officer, based upon his expert testimony, *even though he didn't
> comply with the 15 minute observation*, that *you could still* go
> ahead and allow that because that evidence does not go to
> admissibility.

(Emphasis added.) We agree with the State that this statement was an alternative argument and not a concession that the *Baker* observation period was, in fact, not satisfied. We interpret the State's comments as an attempt to advance its alternative argument that, even if the *Baker* observation period was not met, the trial court could still admit the test results because the *Baker* observation period is unnecessary with Intoxilyzers.

¶21    Relyea also argues that the State waived its argument that the Arresting Officer complied with *Baker* when it responded to the trial court's statement, "[W]hat the evidence still shows is that . . . *Baker* wasn't complied with," by conceding, "[W]e agree with that, Judge. We're okay with that." Again, however, this statement was made in the context of the State's presentation of its alternative argument that the *Baker* rule is not required to assure the accuracy of Intoxilyzer results. The court's statement that *Baker* was not complied with was made immediately after the State argued that the court should follow an Idaho Court of Appeals case, which held that Intoxilyzer 5000[6] results could be admitted in the absence of a fifteen-minute observation period required for Breathalyzer results. *See generally State v. Charan*, 971 P.2d 1165, 1167-68 (Idaho 1998). Earlier at the August 10, 2009 hearing, the State had presented its argument on *Baker* compliance. Upon completing its remarks on that point, the State moved to its alternative argument that compliance was irrelevant. Due to the context in which this statement was made and the State's unequivocal prior argument that the sixteen minutes of observation at the police station satisfied *Baker*, we are not convinced that

---

[6]The Intoxilyzer 5000 is an earlier model of the Intoxilyzer 8000 used to test Relyea.

the State intended to abandon its position that the Arresting Officer had complied with *Baker*. Instead, we view the exchange as an inartful attempt to argue in the alternative.

¶22    That the court and parties understood these apparent concessions were made for purposes of the alternative argument only is supported by Relyea's response,

> [*E*]*ven though the* [*Arresting Officer*] *testified that after he took Mr. Relyea out of the vehicle, he did observe him for* [*sixteen*] *minutes, it still doesn't cure* Baker *because* Baker *starts with a mouth check and he didn't redo the mouth check* which is what happened in [*Vialpando*]. In [*Vialpando,*] the suspect regurgitated, the officer rechecked the mouth and that's when *Baker* restarts. He never did in our case here. The [Arresting Officer] from Mr. Relyea's case never did a recheck. So just by observing him for the [sixteen] minutes when he got out of the car still doesn't cure *Baker*.

(Emphasis added.) Although the State had just made the statements that Relyea now claims operate as a waiver, Relyea apparently understood at the time that the State continued to advance its argument that the Arresting Officer had complied with *Baker*.

¶23    Accordingly, where the State argued that the Arresting Officer's observation of Relyea was sufficient under *Baker*, and Relyea addressed that argument immediately prior to the court's January 7, 2010 ruling, we believe the issue was "presented to the trial court in such a way that the trial court ha[d] an opportunity to rule on that issue." *See Brookside Mobile Home Park, Ltd. v. Peebles*, 2002 UT 48, ¶ 14, 48 P.3d 968. Our conclusion is further supported by the fact that the trial court ruled on both issues. *See State v. Taylor*, 2005 UT 40, ¶ 7, 116 P.3d 360 (holding that an issue was preserved because the trial court had ruled on it); *Arbogast Family Trust v. River Crossings, LLC*, 2008 UT App 277, ¶ 11, 191 P.3d 39 (same), *aff'd*, 238 P.3d 1035 (Utah 2010). Therefore, we hold that the issue of whether the Arresting Officer satisfied *Baker* was adequately preserved.

## II. The Trial Court Acted Within Its Discretion in Granting the State's Motion to Reopen the Evidence

¶24    Relyea contends that the State's expert testimony regarding the differences between Breathalyzers and Intoxilyzers was not properly admitted into evidence. Although we do not reach the issue of whether Intoxilyzer results should be subject to the same foundational prerequisites as Breathalyzer results, we address the appropriateness of the trial court's decision to reopen the evidence because the dissent raises similar concerns with respect to the Arresting Officer's new testimony about *Baker* compliance. "[A] motion to reopen a case for the purpose of introducing further evidence is addressed to the sound discretion of the court, and . . . such discretion should generally be liberally exercised in behalf of allowing the whole case to be presented." *State v. Bozung*, 2011 UT 2, ¶ 12, 245 P.3d 739 (internal quotation marks omitted) (citing *Wasatch Oil Ref. Co. v. Wade*, 92 Utah 50, 63 P.2d 1070, 1075 (1936)). This approach serves to "protect[] society's interest in ensuring a complete proceeding where the court considers all relevant, constitutionally obtained evidence." *Id.* (internal quotation marks omitted). Furthermore, the trial court is not limited to reopening the evidence to allow the introduction of newly discovered evidence but instead can admit evidence that could have been introduced during the prior hearing. *See id.* ¶ 13. In determining whether to reopen the evidence, however, the trial court must not exercise its power in "a capricious and arbitrary manner which produces an inequitable or unjust result." *Id.* ¶ 12 (internal quotation marks omitted).

¶25    The Utah Supreme Court has provided "two principles to which trial courts should refer in determining whether to revisit pretrial evidentiary matters." *Id.* ¶ 14. "First, a district court's decision on a pretrial motion to rehear an evidentiary matter should be made in light of the totality of the circumstances" to "ensur[e] a complete proceeding." *Id.* ¶ 15. "Second, the determination of whether or not to grant a pretrial motion to rehear an evidentiary matter should include consideration of any of the nonexclusive factors" provided by the supreme court. *Id.* ¶ 16. These factors include "[t]he reason the proposed evidence was not produced at the first hearing"; "[w]hether [an] omission was deliberate or accidental, grossly negligent or merely careless"; "[w]hether the proposed evidence was lawfully obtained"; "[w]hether the proposed evidence will have a 'substantial effect' on the court's ruling"; "[w]hether permitting the evidence will unfairly prejudice the party against whom it is being offered"; "[t]he experience of the prosecutor"; "[t]he nature of the case"; "[t]he timeliness of the motion"; and "[t]he court's strong interest in controlling its docket and avoiding piecemeal litigation." *Id.* ¶ 17 (third alteration in original) (additional internal quotation marks omitted). In this case, the trial court had substantial discretion in determining

whether to admit new evidence regarding *Baker* compliance, even though the State could have presented this evidence at an earlier hearing. *See Bozung*, 2011 UT 2, ¶ 13. In light of the two principles articulated by the supreme court, the trial court acted well within its discretion.

¶26 First, in considering the totality of the circumstances, admission of the time of arrival at the police station allowed the trial court to gain a more complete description of the events leading to Relyea's Intoxilyzer test. *See id.* ¶ 15. The trial court indicated that evidence of the time of arrival "would be a ground for reconsideration if [the court] misconstrued that fact." Because the time of arrival at the station is a critical fact, the totality of the circumstances warranted the admission of this evidence "to ensur[e] a complete proceeding where the court [could] consider[] all relevant, constitutionally obtained evidence." *Id.* ¶ 12.

¶27 The nonexclusive factors listed by the supreme court also weigh in favor of admission. *See id.* ¶ 17. Although the State could have introduced evidence of the time of arrival at the police station prior to the trial court's June 18 ruling, its failure to do so was not strategic or otherwise intended to disadvantage Relyea. *See generally Stewart v. State*, 827 A.2d 850, 873 (Md. Ct. Spec. App. 2003) (recognizing it is not an abuse of discretion to reopen the evidence where "[t]he State [did] not attempt[] to deliberately withhold evidence in order to present it at a later time and gain an unfair advantage"), *cited with approval in Bozung*, 2011 UT 2, ¶ 17; *Commonwealth v. Branch*, 437 A.2d 748, 751 (Pa. Super. Ct. 1981) ("[T]his court has . . . permitted the reopening of a suppression hearing record in order to permit the introduction of evidence inadvertently omitted by the prosecution."), *cited with approval in Bozung*, 2011 UT 2, ¶ 17. There is also no suggestion that Relyea was prejudiced by the introduction of this evidence because Relyea was able to cross-examine the Arresting Officer and to introduce his own evidence if he desired. *See generally Bozung*, 2011 UT 2, ¶ 17. Additionally, admission of this evidence could have a "substantial effect" on the court's ruling and, in our view, is outcome determinative. *See generally id.* Therefore, we hold that the trial court did not exceed its broad discretion in reopening the evidence to admit the Arresting Officer's testimony about the time of arrival at the police station and his subsequent observation of Relyea.

III. The Arresting Officer's Sixteen-Minute Continuous Observation of Relyea Satisfies
*Baker* and *Vialpando*

¶28    The State argues that the Arresting Officer satisfied the fifteen-minute observation period required by *Baker* and *Vialpando* and that the trial court erred in ruling that the results of the Intoxilyzer test were inadmissible. Under the facts present here, we agree.

¶29    Utah courts have adopted three foundational requirements to determine whether the results of a Breathalyzer test are admissible into evidence. *See In re Oaks*, 571 P.2d 1364, 1367 (Utah 1977) (Maughan, J., dissenting) (citing *State v. Baker*, 355 P.2d 806, 809-10 (Wash. 1960)); *State v. Vialpando*, 2004 UT App 95, ¶ 14, 89 P.3d 209. In *Vialpando*, those requirements were applied to the results of an Intoxilyzer, without analysis of whether the rationale was equally applicable. *See Vialpando*, 2004 UT App 95, ¶¶ 13-19; *see also supra* note 5. First, the machine must have "been properly checked by a trained technician, and . . . in proper working condition at the time of the test." *See Vialpando*, 2004 UT App 95, ¶ 14. Second, the test must be "administered correctly by a qualified operator." *Id.* Third, a police officer must have "observed the defendant during the fifteen minutes immediately preceding the test to ensure that the defendant introduced nothing into his or her mouth during that time." *Id.*

¶30    The only requirement at issue here is whether the fifteen-minute observation requirement was satisfied. The State concedes that the Arresting Officer was not "in a position to adequately monitor [Relyea] for regurgitation" and did not satisfy the above requirements on the five-minute drive from the scene of the arrest to the police station. However, the State contends that the Arresting Officer satisfied this requirement by continuously observing Relyea for sixteen minutes after arriving at the police station. According to Relyea, because his mouth was not rechecked for foreign substances upon arrival at the police station, the *Vialpando* requirements were not satisfied.[7] Thus, despite the dissent's concern with Relyea's due process rights, the issue he asserts on appeal is quite narrow. That issue is whether a recheck of the suspect's mouth is required after a period of interrupted observation when the purpose of the observation

---

[7]Relyea does not contest that the Arresting Officer's observation was adequate after arriving at the police station. Relyea's brief states,"When they arrived at [the] station and the officer began to observe Relyea *in a manner sufficient to ensure nothing new was introduced into Relyea's mouth*[,] the [Arresting Officer] failed to check to ensure it was free from any foreign matter." (Emphasis added.)

period is otherwise satisfied under *Vialpando*'s three-prong test. We conclude that it is not.

¶31 A mouth check ensures that a suspect's mouth is clear of foreign objects prior to the test, however, nothing in *Vialpando* dictates repeated checking of the suspect's mouth in every instance where the officer's observation of the suspect is interrupted. Under *Vialpando*, "'the level of surveillance must be such as could reasonably be expected to' ensure that no alcohol has been introduced into the suspect's mouth, 'from the outside or by belching or regurgitation,' during the entire observation period." *Id.* ¶ 18 (quoting *State v. Carson*, 988 P.2d 225, 227 (Idaho Ct. App. 1999)). Accordingly, if after an initial check of the mouth, the officer's continuous observation of the suspect is interrupted, a recheck is not required where "the suspect had no opportunity to ingest or regurgitate anything" during the period of interrupted observation. *See id.*

¶32 In this case, the circumstances indicate that no foreign substances were introduced into Relyea's mouth after the initial mouth check. Relyea was placed in the patrol car with his hands cuffed behind his back, thereby preventing him from introducing any foreign objects into his mouth. *See Vialpando*, 2004 UT App 95, ¶ 19. Although Relyea did "regurgitate[] into his throat" on the ride to the police station, he testified that he quickly swallowed down any residue prior to arriving at the police station. And Relyea does not claim that any other foreign substances were introduced into his mouth after the initial mouth check. Because Relyea had no opportunity to introduce foreign substances into his mouth and he admits that he quickly swallowed down any residue from the regurgitation into the "back of his throat" on the ride to the police station, a subsequent check of Relyea's mouth after arriving at the police station was unnecessary.

¶33 Thus, the remaining inquiry is whether the purpose of the observation period was satisfied during the sixteen minutes at the police station before the test. In *Vialpando*, this court explained,

> The purpose of the observation period is to ensure that a defendant does not introduce anything into his mouth that might taint the test results. While this requirement serves to ensure that the defendant places no food, drink, or smoke into his mouth during the observation period, its most

important function is to ensure that any alcohol in a
suspect's mouth is absorbed into the system before the test is
administered.

*See id.* ¶ 18 (citing *State v. Gardner*, 1998-NMCA-160, ¶ 12, 126 N.M. 125, 967 P.2d 465).

The purpose of the observation period is satisfied if . . . (1)
the suspect was in the officer's presence for the entire
period[,] (2) it is clear that the suspect had no opportunity to
ingest or regurgitate anything during the minimum
observation period[,] and (3) nothing impeded the officer's
powers of observation[] during the observation period.

*Id*.

¶34    The first requirement is satisfied here because Relyea did not "leave [the
Arresting Officer's] side" after arriving at the police station.  Accordingly, Relyea was in
the Arresting Officer's presence throughout the entire sixteen-minute period prior to
the administration of the test.

¶35    With regard to the second requirement, Relyea's hands were secured behind his
back at the time of arrest and no foreign substances were in his mouth at that time.  He
remained handcuffed thereafter and had no opportunity to ingest or regurgitate
anything during the minimum observation period.  *See Vialpando*, 2004 UT App 95, ¶ 19,
89 P.3d 209 (noting that the suspect was seated in the front seat of a patrol car with his
"hands handcuffed behind his back, preventing [the suspect] from placing anything in
his mouth").  While the defendant in *Vialpando* informed the officer when he vomited,
and the officer checked the defendant's mouth after each occurrence to ensure that the
defendant's mouth "was clear of foreign matter," *see id.* ¶¶ 15-16, we are convinced that
the purposes of *Baker* were likewise satisfied in this case.

¶36    After the mouth check, Relyea was placed in the police car with his hands
secured behind his back.  Thus, even if the observation of Relyea during transport was
not sufficient to satisfy *Baker*, the circumstances were such that Relyea had no
opportunity to introduce foreign matter into his mouth.  Once they arrived at the police
station, Relyea remained handcuffed and was within five feet of the Arresting Officer

during the entire observation period.  The Arresting Officer, who was also able to observe Relyea both visually and aurally, did not hear Relyea burp or regurgitate during the observation period.  *See Vialpando*, 2004 UT App 95, ¶ 19 ("[The suspect] sat next to the trooper for the entire fifteen-minute period, and during that time the trooper monitored, both visually and aurally, to ensure that [the suspect's] mouth remained clear.").  Furthermore, the trial court did not find that he burped or regurgitated after arriving at the police station and Relyea could not recall whether he did so.  And while Relyea testified that he regurgitated during transport, he also indicated that it reached only the back of his throat and that he immediately swallowed the residue.  Under these facts, Relyea had no opportunity to place any foreign substances in his mouth after the initial mouth check.

¶37    The third *Vialpando* requirement is also satisfied because the Arresting Officer's power of observation was not hindered during the observation period.  Although the Arresting Officer was preparing the Intoxilyzer for operation and did not keep a constant fixed gaze on Relyea, Relyea was "sitting handcuffed in front of him" and the Arresting Officer "was able to look at [Relyea], look at the screen, [and] look back at [Relyea]."  The "undivided attention of the observing officer is not required," and officers may perform other tasks so long as they are still monitoring the suspect.  *See id.* ¶ 18.  The Arresting Officer was simultaneously able to focus on setting up the Intoxilyzer machine and to observe Relyea for sixteen continuous minutes, with no other distractions interrupting his observation.

¶38    Because all three prongs under *Vialpando* are satisfied, the State has established "a reasonable belief that [Relyea's] mouth was clear for the entire observation period." *See id.* ¶ 19.  Therefore, we "conclude that the purpose of the observation period was satisfied and that the [I]ntoxilyzer results were reliable." *Id.*  In reaching the opposite conclusion, the trial court considered only the twenty-one-minute period that included the five-minute ride to the police station, presumably on the assumption that a second mouth check was required upon arrival.  Under the facts present here, we conclude that it was not and that, therefore, the trial court exceeded its discretion by failing to consider whether the purposes of *Baker* were satisfied during the sixteen-minute continuous observation by the Arresting Officer that began upon arrival at the police

station.  Accordingly, we reverse the trial court's ruling suppressing the Intoxilyzer results and remand for further proceedings.[8]

IV.  The Admission of Additional Evidence Did Not Violate Relyea's Due Process Rights

¶39    According to the dissent, the trial court violated Relyea's due process rights when it allowed the State to augment the record because the shifting purpose of the hearings made the admission of the evidence fundamentally unfair.  *See infra* ¶ 47. While we agree that the purpose of the hearings conducted by the trial court after its initial June 18, 2009 ruling evolved, we are not convinced that Relyea's due process rights were violated as a result.

¶40    Relyea had both notice and an opportunity to be heard on the *Baker* compliance issue.  First, the trial court sent written notice to both parties that the August 10, 2009 hearing would address whether to allow the State to supplement the record, putting Relyea on notice that the trial court might do so.  While the State's initial insistence that it was not asking the trial court to reconsider its prior ruling may have misled Relyea, the State expressly asserted a contrary position at the start of the August 10, 2009 hearing.  Likewise, although the trial court described the evidence as an "offer of proof," the parties were on notice that the issue before the court was whether the State would be allowed to supplement the record with that evidence.  Furthermore, the trial court allowed Relyea to cross-examine the State's witnesses and provided Relyea the

---

[8]Because we conclude that the requirements of *Vialpando* were satisfied, we need not consider whether a fifteen-minute observation period, like required to assure the accuracy of Breathalyzer results, is also necessary before the results of an Intoxilyzer test can be admitted.  *Compare State v. Charan*, 971 P.2d 1165, 1167-68 (Idaho Ct. App. 1998) (holding that even though a fifteen-minute observation period was not satisfied, a proper foundation for admission of Intoxilyzer 5000 results was met when an expert testified that the observation period is "not really necessary to ensure accurate test[]" results, but noting that whether foundational standards are satisfied must be determined on a case-by-case basis), *with* Michael P. Hlastala, *The Slope Detector Does Not Always Detect the Presence of Mouth Alcohol*, Champion Mag., March 2006, *available at* http://www.nacdl.org/Champion.aspx?id=4599 (noting inadequacies in slope detectors and advocating for duplicate tests fifteen minutes apart).

opportunity to present his own evidence. After allowing the State's witnesses to testify, the trial court specifically notified Relyea that he was free to present "anything else" he wanted. Even when Relyea declined this invitation, the trial court deferred final argument on whether it would accept the State's new evidence or reconsider its original ruling on the motion to suppress to a hearing scheduled for November 9, 2009.[9]

¶41    At the continuation of the hearing, the State asked the trial court "to reconsider its prior ruling," "taking into account all the supplemental evidence that we [presented]." Before deciding whether to do so, the trial court stated that Relyea "could certainly present any evidence [he] want[ed] to the contrary." Relyea decided not to present any contrary evidence or to request additional time to do so. The trial judge then ruled, "I'm going to allow this evidence [the testimony from the Technician and Arresting Officer] *to be considered*—well, *I'm going to allow the State to augment the record* is what I should say because *this is new evidence that's coming in. . . .* I'm allowing the record to be augmented." (Emphasis added.) The trial court's statement leaves no doubt that the evidence was admitted as part of the evidentiary record and not simply as a nonevidentiary offer of proof. Immediately thereafter, the trial court offered Relyea another opportunity to put on "anything" or to obtain an expert.

¶42    Only after Relyea rejected that last opportunity to be heard did the trial court enter its findings of fact based on all of the evidence admitted before and after its initial ruling. Despite its consideration of the additional evidence, the trial court reaffirmed its holding that the Intoxilyzer results were inadmissible under *Vialpando*, rejecting the State's argument that the observation requirement was unnecessary and that it had been met. Based on this record, we do not agree with the dissent that "neither the parties nor the trial court had a firm understanding of what was happening with these proceedings." *See infra* ¶ 52.

¶43    The trial court has considerable discretion in expanding the purpose of a hearing beyond the scope of the initial request as long as doing so is not arbitrary and capricious and does not lead to "an inequitable or unjust result." *See State v. Bozung*, 2011 UT 2,

---

[9]Although the dissent refers to the August 2009 and November 2009 hearings as the "Offer of Proof Proceedings," *see infra* ¶ 47, the issue before the trial court and the notice to the parties in both instances, indicated that the issue to be decided was whether the State's evidence would be accepted as a supplement to the record.

¶ 12, 245 P.3d 739 ("Indeed, we have long held that [a] motion to reopen a case for the purpose of introducing further evidence is addressed to the sound discretion of the court, and that such discretion should generally be liberally exercised in behalf of allowing the whole case to be presented." (alteration in original) (internal quotation marks omitted)).  Here, each time the focus of the hearings expanded, the trial court afforded Relyea an opportunity to be heard after notice of that shift in purpose.  *See generally Zinermon v. Burch*, 494 U.S. 113, 126 (1990) ("[A due process] violation . . . is not complete when the deprivation occurs; it is not complete unless and until the [court] fails to provide due process.").  We are simply not convinced that a defendant's choice not to avail himself of the process offered constitutes a violation of his due process rights.  Instead, we conclude that Relyea was provided appropriate due process.  *See generally Chen v. Stewart*, 2004 UT 82, ¶ 68, 100 P.3d 1177 (noting that the level of due process required "may vary from situation to situation," depending on the circumstances).

¶44    Additionally, although Relyea contests the admission of the Technician's expert testimony, he does not argue that the Arresting Officer's August 10, 2009 testimony was improperly admitted.  Relyea actually incorporates that testimony into his brief on appeal, noting that "[t]he officer and Relyea arrived at the police station at 3:12 p.m.," without any indication that the inclusion of this evidence in the trial court's findings was unfair or done without adequate notice or opportunity to be heard.  Instead, Relyea argues that *Baker* requires a mouth check whenever an officer's observation is interrupted, irrespective of how much time passes between the interruption and the administration of the Intoxilyzer test.  Contrary to the dissent's contention that our ruling is based on an expectation that Relyea "should have put on more evidence pertaining to the *Baker* compliance issue or challenged the State's offerings on *Baker* compliance," *see infra* ¶ 52, we expect neither.  Our decision today is based on our disagreement with the only argument Relyea raises on this issue, which is that the Arresting Officer was required to recheck Relyea's mouth in order to rely upon the sixteen minutes of continuous observation at the police station.  Accordingly, we do not find the dissent's contention that the admission of this evidence is "fundamentally unfair and violate[d] Relyea's due process rights" persuasive.  *See infra* ¶ 47.  Indeed, this is an argument that is not advanced by Relyea.


CONCLUSION

¶45     The Arresting Officer's continuous observation of Relyea for sixteen minutes satisfied the requirements of *State v. Vialpando*, 2004 UT App 95, 89 P.3d 209. Accordingly, the trial court's order suppressing the Intoxilyzer results is reversed and the case is remanded for further proceedings.

_____
Carolyn B. McHugh,
Presiding Judge

-----

¶46     I CONCUR:

_____
Stephen L. Roth, Judge

-----

DAVIS, Judge (dissenting):

¶47     I respectfully dissent from the majority opinion because I believe our reliance on the August 2009 and November 2009 proceedings (the Offer of Proof Proceedings) is limited by the narrow purpose for which the trial court permitted those proceedings to take place, which was *not* to put on new evidence and reargue whether *State v. Baker*, 355 P.2d 806 (Wash. 1960), was complied with, but to lay the groundwork for the State's argument that *Baker* is obsolete in light of advancements in Breathalyzer technology. I believe the majority's reliance on the Offer of Proof Proceedings for off-topic evidence of *Baker* compliance is fundamentally unfair and violates Relyea's due process rights.[1]

_____

    [1]The majority argues that because Relyea did not raise any issues of due process, I should not be concerned with such issues. This, however, misconstrues my concern.

(continued...)

*See Dairy Prod. Servs., Inc. v. City of Wellsville*, 2000 UT 81, ¶ 49, 13 P.3d 581 ("[D]ue process is not a technical conception with a fixed content unrelated to time, place, and circumstances. Instead, due process is flexible and, being based on the concept of fairness, should afford the procedural protections that the given situation demands." (citations and internal quotation marks omitted)).

¶48    The parties and the trial court were confused as to what to call the Offer of Proof Proceedings and what rule authorized them. The State and trial court proceeded as though the purpose of the Offer of Proof Proceedings was limited and as though this was not a continuation, reopening, or reargument of the *Baker* compliance issue, but an entirely separate and distinct aspect of the case. The parties and the trial court proceeded accordingly, leading Relyea to expect that the State would not turn around and rely on the Offer of Proof Proceedings to challenge the trial court's *Baker* compliance ruling. The majority's opinion, however, permits just that.

¶49    The State titled its request for an additional evidentiary hearing, "Motion For Leave To Supplement Record," and stated, "If the court permits the [S]tate a short hearing in which to supplement the record, the [S]tate will *not* ask the court to reconsider its [*Baker* compliance] ruling. . . ." (Emphasis added.) Relyea opposed the motion, arguing that the Utah Rules of Criminal Procedure do not allow the State's request because it amounted to a request for a "re-ruling" on the suppression issue. During the August 2009 proceeding, the trial court seemingly agreed with Relyea that there was not a clear procedure that allowed the State's request and expressly declined to treat the State's motion as a motion to supplement. Instead, the trial court "grant[ed the] motion" but "den[ied] the request to augment the record" and in turn permitted the State to "do an offer of proof by putting on the evidence so [it could] preserve [its challenge to *Baker's* obsolescence]." The trial court expressly prohibited the State from

---

[1](...continued)
The due process violation I identify is not something Relyea would have argued on appeal. Rather, it is a result of the majority's decision to reverse and remand, relying on the Offer of Proof Proceedings in a manner that transforms those proceedings into something more than they actually were. Indeed, I interpret Section IV of the majority opinion as underscoring my due process concerns, in that it demonstrates in even greater detail how confused and unclear the trial court and parties were throughout the Offer of Proof Proceedings.

"augment[ing] the record" with facts relevant to the motion to suppress after it had already ruled to exclude the Intoxilyzer evidence.  The State agreed with that determination, noting that the purpose of the Offer of Proof Proceedings was not to challenge "the district court's June 2009 ruling of inadmissability based on *Baker* rule noncompliance" but, "to challenge the utility of the *Baker* decision requiring an officer to observe a suspect for 15 minutes before administering an intoxilyzer test," and to "help the [c]ourt understand the technical advancement and capabilities of the Intoxilyzer 8000 as compared to the [B]reathalyzer that was used in 1958 in [*Baker*]."  Relyea also understood that this was the limited purpose of the Offer of Proof Proceedings, explaining, "The trial court scheduled a hearing on the State's motion after the State made it clear that it was not presenting evidence for the purpose of reconsidering the exclusion of [the Intoxilyzer] test results and would not be asking the court to do so . . . ."

¶50     The State offered its evidence during the August 2009 proceeding.  At the conclusion of the proceeding, the trial court "recognize[d that] this [was] the State's attempt to augment the record" but still asked Relyea's trial counsel if she "want[ed] to present anything else," to which counsel responded in the negative.

¶51     After the State put on its evidence in the August proceeding, the parties reconvened in November 2009, at which time the State explained that it needed "another ruling from [the court]" on *Baker* and proceeded to argue why *Baker* should be abandoned.  Specifically, the State asked the trial court to "reconsider its prior [suppression] ruling," though the State's arguments in support of that request were confined to the *Baker* obsolescence issue and not the *Baker* compliance issue addressed in the original suppression ruling.  The State suggested that the trial court "look at [its suppression ruling] again[,] taking into account all the supplemental evidence" that it proffered in August 2009.  The State asserted that this was procedurally permissible because Relyea's initial motion to suppress should have actually been considered a motion in limine and the "trial court is free, in the exercise of sound judicial discretion, to alter a previous in limine ruling," *see Tschaggeny v. Millbank Ins. Co.*, 2007 UT 37, ¶ 16, 163 P.3d 615 (emphasis and internal quotation marks omitted).  Relyea disagreed, arguing that "because the supplemental evidence was still regarding the *Baker* issue and the observation period," and "because the [c]ourt did not overlook any facts . . . [or] misconstrue any of the facts," the State should not be permitted to augment the record.  This time, however, the trial court seemed to agree with the State's characterization of

Relyea's original motion to suppress as a motion in limine and "allow[ed] the State to augment the record," but maintained its original position that the Intoxilyzer evidence failed to comply with *Baker*. The trial court also acknowledged that "probably nobody saw this coming" and that "all of this should have been presented at the original [April 2009] hearing," and again offered Relyea the opportunity to present additional evidence on this matter. The trial court issued another Order in January 2010, in light of the Offer of Proof Proceedings, in which it stated that the *Baker* compliance issue and the *Baker* obsolescence issue were both before the court. The court listed facts in its findings that were presented in the August 2009 proceeding, including new evidence that addressed the *Baker* compliance issue. The trial court also stated in this order that the August 2009 proceeding was requested so that the State could "argue[] that compliance with the *Baker* rule was not necessary."

¶52     In other words, neither the parties nor the trial court had a firm understanding of what was happening with these proceedings. However, despite this confusion, the State maintained throughout the two proceedings that it was "trying to be transparent" about its goal, which was "to overturn *Baker*." Thus, the expectation the majority now imposes on Relyea—that he should have put on more evidence pertaining to the *Baker* compliance issue or challenged the State's offerings on *Baker* compliance grounds during the Offer of Proof Proceedings—is fundamentally unfair.[2] *See, e.g., supra* ¶¶ 40-42. A party should not be expected to argue about apples in a proceeding about oranges. The suppression hearing was not reopened, and we should not now impose on Relyea the expectation that he should have treated the Offer of Proof Proceedings as though they were actually continuations of the suppression hearing. *See Pau v. Yosemite Park & Curry Co.*, 928 F.2d 880, 890 (9th Cir. 1991) (explaining that an offer of proof proceeding should be reviewed according to the contours the trial court established for that proceeding).

¶53     I agree with the majority that the trial court has considerable discretion to grant a party's motion to supplement the record and "allow the introduction of newly discovered evidence" as well as "evidence that could have been introduced during [a] prior hearing." *See supra* ¶ 24. However, these were not proceedings to supplement the

---

[2]The majority characterizes the Offer of Proof Proceedings as a forum for the State to both reassert its *Baker* compliance argument and argue that whether *Baker* was satisfied is immaterial because *Baker* should be considered obsolete. *See supra* ¶¶ 21-22.

record of *Baker* compliance, nor were they billed by the State or trial court as proceedings to continue or to reopen the April 2009 suppression hearing in all of its aspects. These were offer of proof proceedings, which are generally intended to permit a party to "create an appellate record of what the evidence would have shown," *State v. Boyd*, 2001 UT 30, ¶ 36, 25 P.3d 985, in order to "preserve the record for appellate review," *Las Vegas Convention & Visitors Auth. v. Miller*, 191 P.3d 1138, 1150-51 (Nev. 2008). Evidence offered during such proceedings may or may not constitute evidence supporting a finding of fact. Here, the parties and the trial court were quite clear about the limited scope and purpose of the proceedings. Indeed, the manner in which the trial court asked Relyea at the close of the August 2009 proceeding if he would like to "present anything else," even though the proceeding was "the State's attempt to augment the record," indicated that the trial court did not expect Relyea to participate in that manner. *See supra* ¶ 50. This shared understanding assured Relyea that the Offer of Proof Proceedings would actually be limited in scope. Presumably these repeated assurances caused Relyea to focus his participation in the proceedings accordingly, i.e., to treat the proceedings as true offer of proof proceedings on *Baker* obsolescence, rather than proceedings to supplement the record of *Baker* compliance, and to focus on the propriety of the evidence proffered in light of the State's restricted purpose. Under the unique facts and circumstances of this case, I believe fundamental notions of due process require us to constrain our analysis to the same narrow purpose mutually understood by the parties and the trial court when they went forward with the Offer of Proof Proceedings. *Cf. Pau*, 928 F.2d at 890. To do otherwise, as the majority has done, is akin to permitting the State a second bite at the apple[3] and

---

[3]I acknowledge that the situation here does not amount to res judicata. *See generally Macris & Assocs., Inc. v. Neways, Inc.*, 2000 UT 93, ¶ 34, 16 P.3d 1214 (noting that "there are two branches of res judicata, claim preclusion and issue preclusion—also known as collateral estoppel"—and explaining that "claim preclusion applies to *whole claims*, whether litigated or not, and prevents parties from relitigating the same claim in a second suit," while "issue preclusion, or collateral estoppel, arises from a different cause of action and prevents parties or their privies from relitigating particular *issues* that have been contested and resolved" (internal quotation marks omitted)); *Salt Lake City v. Silver Fork Pipeline Corp.*, 913 P.2d 731, 733 (Utah 1995) ("Claim preclusion prevents parties or their privies from relitigating a claim for relief that was once litigated on the merits and resulted in a final judgment between the same parties or

(continued...)

transforms the repeated assurances by the State and trial court that the proceedings were limited in purpose and scope into a true "gotcha" scenario for Relyea on appeal, *see generally Salcedo v. Asociacion Cubana, Inc.*, 368 So. 2d 1337, 1339 (Fla. Dist. Ct. App. 1979) ("[C]ourts will not allow the practice of the . . . 'gotcha!' school of litigation to succeed.").

¶54   The majority's indulgence of the State's *Baker* compliance argument is based on new evidence presented in the August 2009 Offer of Proof Proceedings that the Arresting Officer observed Relyea for sixteen minutes in the police station before administering the Intoxilyzer test (the observation evidence).  Arguably, the trial court should not have permitted the State to present that, or any other evidence that was beyond the narrow scope of the proceedings, and Relyea should have objected to its admission.  Nonetheless, the fact that the State was able to introduce evidence extrinsic to the purpose of the proceedings does not render the nature of the majority's reliance on that evidence proper.

¶55   Additionally, when the trial court stated that the observation evidence "would be a ground for reconsideration if [the court] misconstrued that fact," the State admitted that the observation evidence "wasn't presented."  The trial court then explained that any new evidence offered in the Offer of Proof Proceedings "wo[uld not] change the [court's June 18 suppression] ruling unless [the State could] show that [the court] misconstrued" facts that were on the record "at the time the motion was submitted." When the trial court ruled on the suppression motion, the record reflected a twenty-one minute time period between the mouth check and the Intoxilyzer test, with no differentiation made as to how much of that time was spent in the patrol car and how much was spent in the police station.  The trial court correctly determined that it could not reconsider its ruling based on the State's newly presented evidence and that even if it did reconsider its ruling, the observation evidence would not change its determination that *Baker* was not satisfied.  The State appeared to agree with this holding, conceding that despite the observation evidence, the Arresting Officer still did

³(...continued)
their privies." (emphasis and internal quotation marks omitted)).

not comply with the *Baker* requirements.[4] If anything, this concession reinforces the other assurances Relyea received that *Baker* compliance was a settled issue and that the Offer of Proof Proceedings were intended to focus solely on preserving evidence as to whether *Baker* ought to be overturned. This distinction further justified Relyea's decision not to object to the admission of the observation evidence or present his own evidence during the Offer of Proof Proceedings.

¶56     Consequently, in light of the repeated assurances given to Relyea that the Offer of Proof Proceedings were limited in scope and purpose and would not subsequently be used to revisit the *Baker* compliance issue, and in recognition of the fact that an offer of proof may or may not constitute evidence that can support a finding of fact, I respectfully dissent from the majority opinion. I would determine that the trial court did not abuse its discretion by suppressing the Intoxilyzer test results, even in light of the observation evidence proffered during the Offer of Proof Proceedings, because of the nature of those proceedings and the due process concerns implicated by the State's and trial court's repeated assurances to Relyea throughout those proceedings. To disregard the import of the State's and trial court's repeated assurances to Relyea, and to then use evidence proffered in the Offer of Proof Proceedings to reverse the trial court's decision, is fundamentally unfair. The trial court correctly reaffirmed its ruling on Relyea's motion to suppress, and I would accordingly affirm that ruling.

---

[4]The State appeared to concede that *Baker* was not complied with at least one other time during the proceedings. During the November 2009 proceeding, the State, in requesting that the trial court reconsider its ruling granting Relyea's motion to suppress, stated,

> [Y]ou could go ahead and take a look at the evidence that we provided to the [c]ourt and find that the officer, based upon his expert testimony, even though he didn't comply with the 15 minute observation, that you could still go ahead and allow [the Intoxilyzer test results] because that evidence does not go to admissibility. We believe it goes to the weight.

James Z. Davis, Judge